## MARTIN BROWN v. CALVIN LAMPHEAR.

### [IN CHANCERY.]

*Chancery.   Relief from Mistake in a Conveyance.*

The orator conveyed to the defendant a lot of land on which was a spring from which the orator by means of an aqueduct supplied his own and other premises with water. This aqueduct was of greater value to the orator than the price he received for the land. By the mistake of the orator, who did not intend to part with the right to use the water from the spring, the deed to the defendant contained no reservation of such right. The defendant, at the time he purchased, had no knowledge of the existence of the spring. *Held,* upon a bill in chancery for that purpose, that the orator was entitled either to a conveyance from the defendant of the right to use the aqueduct, or to a reconveyance of the land on repaying to the defendant the price thereof, and that the defendant might elect which of these modes of relief the orator should have.

Where a mistake in a conveyance is of so fundamental a character, that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained, by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo,* a court of equity will interfere in its discretion to prevent intolerable injustice.

BILL IN CHANCERY. The bill charged that in March, 1856, the orator sold and conveyed to Amos A. Brown, a ten acre pasture in Whitingham, for $120, in which pasture was a spring, which supplied the house owned and occupied by the orator, and also several other houses owned and rented by him, with water ; that in the bargain with Amos Brown and in the deed to him, the orator reserved the use of the spring and the right to bring water from it to supply his various houses, by pipes, aqueduct, &c.; that Amos Brown went into possession of the pasture, but neglected to put his deed on record ; that the defendant afterwards applied to Amos Brown to buy this pasture, who refused to sell it, unless the orator would sell to him a certain other pasture ; that the orator, on being applied to, at first declined to sell the second pasture, but the defendant being very urgent, he finally consented to sell the second pasture to Amos Brown, so that the defendant might be gratified in his desire to obtain

the first pasture of Amos Brown ; that during these negotiations Amos Brown told the defendant that he did not own the spring, and that if he sold the pasture the use of the spring must be reserved to the orator, and explained fully to the defendant what right and use the orator had of the spring ; that after the bargain was made, it was agreed between the orator, the defendant and Amos Brown, that inasmuch as the deed from the orator to Amos Brown had not been recorded, that deed should be given up and cancelled, and that the orator should give a deed to the defendant, with all the reservations therein as to the use of the spring and the right to lay pipes, &c., which were in the deed of the orator to Amos Brown, and that the orator should also deed the second pasture to Amos Brown ; that accordingly the deeds were executed by the orator to the defendant and to Amos Brown of the respective pastures, but by the mistake of the scrivener, the reservations about the spring were not put into the deed to the defendant, which the orator signed and delivered without reading it and without noticing the omission, having full confidence in the scrivener and the defendant, and supposing that the deed was drawn up according to the bargain and understanding between them ; that for several years after the defendant took possession under his deed, the orator enjoyed the use of the water as he had theretofore done, without hindrance from the defendant, during which time he did not know, having had no occasion to examine, that the mistake had been made in the deed in omitting the reservation of the spring, &c.; that in June, 1858, the defendant for the first time interfered in the orator's enjoyment of the spring, and cut off the pipes, and prevented the water from running to any of the orator's houses ; that the orator then remonstrated with the defendant, and reminded him of the bargain that he (the orator) should have the free use of the spring, and the defendant thereupon admitted the bargain to have been as the orator claimed, and that he (the defendant) had acted wrongfully in interrupting the orator's use of the spring ; that the orator, relying upon such admission of the defendant, entered the pasture and repaired his water works, for which the defendant has sued him in trespass, which suit was then pending.

Brown v. Lamphear.

The prayer of the bill was that the defendant be enjoined from prosecuting the action of trespass, and that he be decreed to convey by deed the spring to the orator according to the terms of the bargain, and for further relief, &c.

The answer of the defendant set forth in substance that in September, 1855, he bought of the orator a house in the village of Jacksonville, in Whitingham, previous to which purchase he had resided for several years in the state of New York, and had never lived in Whitingham; that during the negotiations about the house, the orator offered to sell to him the ten acre pasture situated near the house, but the defendant declined at that time to trade for the pasture; that the defendant then went to New York, to remove his family to Whitingham, and on his return in November, 1855, he inquired of the orator if he then wanted to sell the pasture to him, and the orator replied that Amos A. Brown was going to have it, upon which the defendant gave up all thoughts of buying that pasture, and during the winter of 1855–6, had several conversations with the orator about buying another pasture, but made no trade; that in April, 1856, Amos Brown offered to sell him the first named pasture, and told him that he had got the orator's best terms for the second pasture, and should buy it, if he could sell the first pasture to the defendant, and the defendant accepted Amos Brown's offer; that on the same day, the defendant was in the orator's store, who inquired if he was going to buy the first named pasture, and the defendant informed him that he had concluded to take up with Amos Brown's offer, and the orator then said, that he, (the orator,) would give him a deed of it; that from previous conversations with the orator and Amos Brown, he had supposed that the orator had deeded that pasture to Amos Brown, but he was then informed by one, or both of them, that no deed had been given by the orator to Amos Brown, and it was then agreed by the three that the orator should give a deed of the pasture to the defendant; that on the next day, April 18th, 1856, the orator tendered to the defendant a warranty deed of the pasture, with the usual covenants executed by the orator.

The defendant denied in his answer that he had any knowledge,

Brown v. Lamphear.

information or belief, at the time he accepted the deed, that there was any valuable spring of water on the pasture, or that the orator's houses were supplied with water from that pasture, but he admitted that the orator's houses were in truth supplied from springs in his (the defendant's) pasture, although he never discovered the fact until several weeks after he had received his deed. The defendant denied that any thing was ever said by himself, Amos Brown, or the orator, before the deed was delivered to him, about any spring of water, or about any reservation of any spring of water, but insisted that he always intended, and expected, if he bought the pasture, to have a warranty deed, in common form, with no reservations of any kind in it, and that he should have accepted no other kind of a deed. The defendant positively denied that there was any mistake in writing the deed, and insisted that the deed as written, embodied fully and perfectly the bargain and understanding of the parties to it, and of Amos Brown. The defendant denied that he had any knowledge or belief that the orator intended to reserve the spring, or any rights therein, and says that the first knowledge which he ever had that the orator claimed that he had such intention, or claimed that there was any mistake in the deed, was by service upon him of the bill in this case. The defendant denied that Amos Brown ever told him before the deed was given that the spring did not belong to him, but was reserved to the orator—and insisted that he never had any talk with Amos Brown about the spring any way, till after he had taken his deed.

The defendant stated in his answer that he went into possession of the pasture immediately after taking his deed, April 19th, 1856, and that having occasion to use the water of the spring, he did interrupt the orator's use of it, and that the orator having trespassed upon his land, he had sued him, and insisted that in all this he had acted right.

The answer was traversed, and testimony taken, the purport of which is stated in the opinion of the court.

The chancellor, *pro forma*, dismissed the bill with costs to the defendant, from which decree the orator appealed,

*E. Kirkland* and *P. T. Washburn*, for the orator.

*C. N. Davenport* and *A. Keyes*, for the defendant.

KELLOGG, J.   The complainant conveyed to the defendant by a deed bearing date on the 18th April, 1856, a parcel of land, situated near the village of Jacksonville, in the town of Whitingham, and containing about ten acres.   The deed was a deed of warranty in the usual form, and did not contain any reservations or exceptions.   The complainant by his bill now seeks to have that deed reformed on the ground of an alleged mistake in omitting to insert in it a reservation of a certain spring of water situated on the land conveyed, with the right to take water therefrom by means of a pipe or aqueduct, which was agreed upon by the parties when the contract for the sale of the premises was made, and alleges that this mistake was attributable to the negligence or other fault of the scrivener who wrote the deed.

It appears that at the time of the execution of this deed, the spring, which is the subject of this controversy, supplied with water by means of a pipe or aqueduct leading from it, four dwelling houses belonging to the orator, including the one in which he resided, and two dwelling houses belonging to other persons, which he had agreed so to supply, and that these dwelling houses were dependent upon this spring and aqueduct for the water necessary for household purposes.   This aqueduct had previously been constructed by the plaintiff at an expense of about two hundred dollars.   In the fall of 1855, he sold the lot of land, on which this spring was situated, to his cousin, Amos A. Brown, with a reservation of the spring, the aqueduct or pipe, and the right to repair the same.   In the spring of the following year, there was a negotiation between Amos A. Brown and the defendant, who, during the intervening winter, had resided in the same village, for the purchase by the defendant of this lot of land, the result of which was that the defendant agreed to purchase it for the price which Amos A. Brown had given for it, which was one hundred and twenty dollars, or at the rate of twelve dollars per acre.   We think that the testimony

satisfactorily shows that the plaintiff had executed a deed to his cousin Amos Brown, conveying the lot to him with the reservation agreed upon in their bargain, but this deed was not put upon record, and appears to have remained in the custody of the complainant. When the defendant agreed to purchase the lot, it was agreed by him and Amos A. Brown and the complainant, that the complainant should convey the lot directly to the defendant, it being understood or implied that the deed which he had executed to his cousin Amos A. Brown should be cancelled and destroyed. The plaintiff thereupon wrote the deed from himself to the complainant, bearing date the 18th April, 1856, and duly executed and acknowledged it, and delivered it to the defendant, who then paid to Amos A. Brown the sum agreed upon for the piece of land. This deed conveys the entire estate in this lot, without any reservation of the spring, or of any privilege connected therewith. Nothing was said at the time of the execution of this deed in respect to the spring or the aqueduct privilege, but it cannot be doubted, in view of the testimony, as we think, that neither the complainant, nor his cousin Amos Brown, intended a conveyance to the defendant of any other or greater estate or interest in the lot than that which the complainant had previously sold and conveyed to Amos Brown. The complainant, after the execution of his deed to the defendant, continued for more than two years in as full, free, and undisturbed use and enjoyment of the spring and aqueduct as he had been in prior to the execution of the deed; but, at some time in May, 1858, the defendant asserted an absolute and exclusive right in himself to the spring, and interrupted and obstructed the complainant in the enjoyment of the aqueduct, and the respective rights of the parties to the spring, as affected by the complainant's deed to the defendant, then became a subject of controversy and litigation between them.

We think that it is perfectly clear that the complainant never intended to sell this spring to the defendant, and did not suppose that the deed which he executed would have the effect to convey it to the defendant, or to interfere with his aqueduct, by which the water was conveyed from it. The value of this spring to the complainant, arising from its convenience and essential

necessity for the use of his own dwelling and the dwellings of his tenants, and the large outlay which he had made in the construction of his aqueduct, which greatly exceeded the price for which he sold the land, is in our judgment conclusive proof that he never intended to part with the privilege which he enjoyed by means of the aqueduct. The defendant in his answer denies that he had any knowledge of the existence of the spring at the time he received his deed from the complainant, and it could not, in that case, have been considered by him as enhancing or in any wise affecting the consideration or price which he paid for the land. The defendant in his testimony, (answer to 43rd interrogatory,) in speaking of a conversation with the complainant at his store, after this controversy arose between them, says " he (the complainant) asked me if I supposed that he meant to sell me that spring when he sold me the land. I told him no, for I didn't think he thought any thing about it. I supposed he forgot it." And the first knowledge which the defendant admits that he had of the existence of this spring is stated by him in his testimony, (answer to 33rd interrogatory,) to have been obtained " perhaps a couple of weeks " after he received the deed. In the same answer, after stating that he looked all over the Farnham hill lot to find the spring which supplied the plaintiff's house with water, and could not find it, and gave up the search, he says :—" After that, I made inquiry where that water run from, and found to my great astonishment that the water run from land that I bought of Martin Brown." The complainant is proved in repeated instances to have declared that he never intended to reserve the spring when he executed his deed to the defendant,—that he would not reserve it if he was going to convey the land again,—and that if he was going to make forty deeds he would not have the reservation of the spring in them ; but these declarations were in every instance accompanied with a denial that he sold or conveyed to the defendant any right to the spring, and appear to have been elicited by sympathizing neighbors, who sought amusement or enjoyment by discussions with the plaintiff in respect to the legal effect of his deed—a subject upon which his sensibilities seem to have been very easily excited—and we do not consider that these idle and

foolish speeches, when thus interpreted, are inconsistent with the rights which the complainant asserts by his bill.

The testimony in the case is voluminous, and upon several of the issues is quite contradictory. We have not had entire unanimity of opinion in respect to the facts established by the testimony on all of the issues which arise in the case, but we are agreed in considering the complainant entitled substantially to the relief which he seeks by his bill. We concur in the opinion that the sale of this spring and aqueduct privilege was not in the contemplation of the parties in their bargain, and that the omission to reserve the spring and privilege in the conveyance was a plain and clear mistake on the part of the grantor. The conveyance transfers to the grantee a value which he did not suppose that he was purchasing,—which the grantor did not intend to sell, and the grantee did not expect to buy,—and which the grantee, as he himself says, did not then know as existing in the premises. It is said by our late honored associate, Chief Justice REDFIELD, in his recent edition of Story's Equity Jurisprudence, (Vol. 1, § 138, *i*,) that where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met ; or where an unconscionable advantage has been gained, by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into the error, or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo*, equity will interfere, in its discretion, in order to prevent intolerable injustice. In *Calverly* v. *Williams*, 1 Ves. 310, Lord Chancellor THURLOW says that there is no doubt that if one party thought he had purchased a piece of land as a parcel of an estate, *bona fide*, and the other party thought he had not sold, that is a ground to set aside a contract, that neither party may be damaged ; because it is impossible to say that one shall give that price for part only which he intended to give for the whole, or that the other shall be obliged to sell the whole for what he intended to be the price of part only. The defendant takes by the conveyance a value which he did not purchase, and the case presents such elements of mistake and surprise as afford a solid ground for relief. In respect to the form of this

Brown *v.* Lamphear.

relief, we think that as this mistake arose from the act or neglect of the complainant, the defendant should have the option to receive back his money and re-convey the premises to the complainant, or to re-convey to the complainant the right to the use of the water of the spring by means of the aqueduct, as fully and amply as he enjoyed the same for himself and his tenants when he conveyed the premises to the defendant, together with the right to enter upon the premises whenever it may be reasonable and necessary for the examination, repair, or removal of the aqueduct.

The judgment of this court, therefore, is, that the decree of the chancellor by which the complainant's bill of complaint was dismissed *pro forma* with costs, be reversed, and that the cause be remitted to the court of chancery, with directions to enter a decree therein in favor of the complainant, on the following basis, viz :—The defendant to re-convey to the complainant, by a quit-claim deed, within a reasonable time, to be limited for that purpose, the right freely to draw and use the water from the spring situated on the premises conveyed by the complainant to the defendant by the deed mentioned and referred to in the complainant's bill, by means of an aqueduct running from the same, as existing at the time of the execution and delivery of the said last mentioned deed, for the use of the dwelling houses described in the complainant's bill, together with the right to enter upon and use the premises for the reasonable and necessary examination, repair, or removal of the aqueduct,—and no costs in that case are to be allowed to either party ; or, if the defendant, within a reasonable time, to be fixed and limited for that purpose, shall elect to re-convey the premises to the complainant, on the repayment by the complainant to the defendant of the amount paid by the defendant as the consideration for the said deed, the same being one hundred and twenty dollars, then the defendant to have the option so to do, and, in such case, the complainant to be decreed to deposit the said sum with the clerk of the court of chancery for the use of the defendant, and to be paid over to the defendant on the execution and delivery of such re-conveyance,—the time for making such deposit, and for executing and delivering such conveyance to re-convey the premises,

to be appointed and limited by the decree,—and, on the failure of the complainant to make such deposit within the time so to be limited and appointed for that purpose, the complainant's bill of complaint to be dismissed with costs to the defendant. The injunction heretofore allowed in this case to continue in force ; and, on the failure of the defendant to make such election, to be made perpetual.