WALTER McMULLEN,

*vs.*

THOMAS B. LOCKWOOD and SAMUEL HARGADINE, Sheriff.

*Kent, Sept. T. 1872.*

When a settlement of mutual accounts between parties appears to have been based upon a statement which shows manifest errors upon its face it will be reformed and the collection of a judgment given for the balance will be enjoined.

BILL IN EQUITY.—On the 12th October, 1870, complainant executed his judgment bond to the defendant for $3,700, as a security for such balance as might be found due to the defendant upon a settlement to be thereafter made between them. The proposed settlement was to include certain judgment debts which had been paid for the complainant, by the defendant as his surety, amounting in the whole to $3,454.60, and also was to embrace some mutual accounts then existing between them. A settlement was made between the parties in February, 1871, and resulted in what was at the time supposed by both parties to be a balance due to the defendant of $1,117.09. A short time afterwards the complainant claimed to have discovered an error in the statement of account on which the settlement was based, the error arising out of a mistake in the addition of the debits against the defendant. These debits were taken in the settlement to amount to $5,464.86, whereas, as the complainant insisted, they in

fact amounted to $6,360.26. The total of credits given to Lockwood was $6,581.95. From this total the amount of the debits as they were footed up at the settlement, $5,464.86 being deducted there remained the balance of $1117.09, supposed to be due the defendant. Had the amount of the debits as now claimed by the complainant, $6360.26 been deducted, the balance remaining due to Lockwood would have been only $221.69. To this, it was agreed by the complainant should be added $54.60 for certain costs paid by the defendant which were not included in the settlement, making $276.29 which according to the complainant's case was the true balance due the defendant at the time of the settlement. It was agreed that after the settlement the complainant paid sundry debts for the defendant, to the amount of $227.50, which being credited against the balance as claimed by him, would leave only $48.79 due to defendant. The complainant sought from the defendant a re-examination and correction of their settlement, but the defendant refused, insisting upon the $1117.09 as the true balance and he proceeded in the collection of this balance by execution upon the judgment which had been entered on the complainant's bond for $3700.00. The complainant paid to the sheriff $72.43 which overpaid the balance of $48.79 as claimed by him and the costs amounting to $14.99 and thereupon he filed this bill praying a perpetual injunction against the judgment. At the hearing, the controversy turned upon the question, whether or not the settlement, between the parties, had been made according to a statement of the items of their mutual indebtedness, appearing on a book of accounts, produced by the complainant, which statement on its face shewed the error alleged. The complainant so insisted, while the defendant contended that the settlement had been made not by any statement in a book, but by entries on a slate made from loose vouchers and memoranda ; that the entries on the slate were after the settlement rubbed off, and the vouchers and memoranda

burned, leaving no data for a re-statement ; that the settlement was made carefully, to the entire satisfaction of the complainant at the time, and was correct. Testimony on both sides was read, which so far as is material is stated in the opinion of the Court.

*Comegys and Massey*, for the complainant.

*J. B. Penington*, for the defendant.

THE CHANCELLOR :—

It is agreed in this case that the bond for $3700 given by the complainant on the 12th October 1870 was to be held by the defendant only as a security for such sum as might be found to be due him upon a settlement of their mutual indebtedness thereafter to be made :—further that such settlement was made in February 1871, the result of which shewed a balance then due to the defendant of $111.09. It is also agreed that after the settlement the complainant paid for the defendant $221.69 from which deducting $54.60 for some costs which defendant had paid not included in the settlement, there remained $172.90, as a credit to the balance, whatever that might be, due at the settlement. According to the defendant's case, crediting the $172.90—against the $1117.09 there would remain due him $944.19. This is his claim. The error in the settlement alleged by the complainant, if corrected, would reduce the balance as then ascertained from $1117.09 to $221.69, and, crediting against this the $172.90 before mentioned, there would remain only $48.79 due, which he has since paid to the Sheriff. The complainant therefore claims to owe nothing. With respect to the alleged error, it is one manifest upon the face of the statement shewn on the complainant's book, pp. 140, 141, and if the settlement is proved to have been made upon the basis of that statement, the complainant's case is made

out.  I am clearly of that opinion upon the evidence in
the cause.  Joseph L. Beckett went into the room where
the settlemment was made and saw the parties engaged
in it.  They had before them open, the account book in
question, together with sundry papers and vouchers.
What was the business they were engaged in admits of
no doubt ; for Mr. Lockwood said to the witness, "won't
"you let us have the office ; we want to settle," or words
to that effect.  Nor can there be any doubt that the book
which the witness saw open before them was the account
book containing the statement in question ; for the
witness, who was a partner in business of the complainant,
was very familiar with the book and is positive as to its
identity.  He did not see at what page the book was
open ; but his testimony, given from his knowledge of
the accounts kept in that book, satisfies me that there
was nothing in the book except the statement on pp.
140, 141, which these parties could have been using for
the purpose of a settlement.  What Mr. Beckett saw at
the time of the settlement, corroborated by the internal
evidence of the book, arising out of the correspondence
between the balance shewn by the statement and that
now claimed by the defendant, would, were there nothing
else, go very far inferentially to connect the settlement
with the statement.  But the evidence is carried beyond
inference and becomes direct proof by the statement
of the witness that, afterward while at the defend-
ant's shop, acting somewhat as a mediator between
the parties, the latter took out of his coat-pocket a
copy of this statement, as it appears on pp. 140, 141,
of the account book, and asked the witness if that
" was not in McMullin's hand-writing, and if the figures
"were not his," which the witness, admitting to be true,
the defendant then asked :  " Why does McMullin say that
" he does not owe me ? "  The witness further states that
the defendant, on showing him this paper, said it  "was a
" copy of the account by which he and McMullin settled,"

&c., and the witness looked at the paper, and having been as he elsewhere states, familiar with this statement, says that the paper in the defendant's possession was a copy of the statement. Mr. Beckett stands wholly unimpeached as a witness ; his testimony is not contradicted either directly or by inconsistency with any of the circumstances proved. The point of contradiction mainly relied on is what Mr. Clements states of a conversation between the parties in which something was said about the figuring done on a slate. His statement is : "I understood McMul- "lin to say in the said conversation that *the figuring of* "*the said settlement* was on a slate." This is not inconsistent with the fact that the settlement was by the statement on the book. Doubtless there was, as usual, some figuring not carried into the formal statement and for which a slate would be convenient. Besides this there was some attempt to impeach the statement as appearing on its face to have been altered. This hypothesis is, however, inadmissible, because it is inconsistent with the case made by the answer : for this argument must assume that the statement *was* the basis of the settlement, but afterwards so altered as falsely to shew on its face the error alleged in the bill ; whereas the case made by the answer is that the statement was wholly made up after the settlement. I have, however, considered whether, supposing the statement to have been the basis of settlement, the apparent alterations in it are such as to discredit the alleged error. To have this effect there must appear to be some connection between the alterations and the mistake in the footing up. But there is no such connection whatever. The alterations are in parts of the statement where the error does not arise ; and besides they are alterations evidently in favor of the defendant. On the whole the fact that such alterations do appear, weakens the case made in the answer, that is, that the statement was wholly fabricated subsequently to the settlement ; for, had the complainant

attempted a statement wholly false and fraudulent, it would no doubt have been a clean one.

The conclusion is that the settlement *was* made upon the statement in the account book of complainant, pp. 140, 141 ;—and that there was an error in that statement the correction of which would have reduced the balance due Lockwood at that time from $1117.09 to $221.69 ; that this became afterwards subject to a credit of $172.90, the balance of the $227.50 paid for the defendant after deducting $54.60 for the costs before referred to.  That left $48.79 due the defendant, which with the costs having since been paid to the Sheriff, there remains nothing due on the judgment and the complainant is entitled to relief against it.  The decree will therefore be for a perpetual injunction with costs.