J. T. WILLIAMS v. B. C. HAMILTON AND MAGGIE HAMILTON, Appellants.

Contract: REFORMATION. A unilateral mistake, unaccompanied by fraud of the other party, as to the contents or legal effect of an instrument does not justify its reformation. Such mistake must be mutual to warrant reformation.

104   423
a110  278

104   423
113   294

104   423
116   125
104   423
122    45
128   570

104   423
126   719

Same. A unilateral mistake of law, accompanied by fraud on the part of the other party, may, under some circumstances, authorize the reformation of a contract.

Same. An illiterate party, who, with the knowledge of the other party, relied upon the latter to embody their oral agreement in a written instrument, is not precluded from having the written instrument reformed to conform to their understanding, because it was read over to him before it was executed, and he mentioned certain omissions, but was assured by the other party that he had embodied everything they had agreed on.

Ratification. To preclude a party from obtaining a reformation of a written contract, on the ground that he ratified it after its execution, it must appear that he knew of and understood the contents of the instrument at the time he is claimed to have ratified it.

Innocent Purchaser: reformation. A wife was not a *bona fide* purchaser of land from her husband, where she was conversant with the terms on which he bought the land, and the conveyance to her was in furtherance of an attempt to procure the property for an inadequate consideration.

*Appeal from Greene District Court.*—Hon. S. M. Elwood, Judge.

Saturday, January, 22, 1898.

Suit in equity to rescind and set aside a contract for the exchange of real estate because of fraud, or to reform the contract because of mistake, and to recover the remainder of the consideration due on the instrument as reformed. The trial court decreed reformation and awarded damages as prayed, and defendants appeal.—*Affirmed.*

*Bishop, Bowen & Fleming* for appellants.

*B. O. Clark, Russell & Toliver*, and *M. W. Beach* for appellee.

Deemer, C. J.—After some negotiations between plaintiff and defendant B. C. Hamilton with reference

to the exchange of real estate, they entered into a written contract, of which the following is a copy:

"To Whom It May Concern: This is to certify that we have this day entered an agreement whereby J. T. Williams will sell and convey unto Dr. B. C. Hamilton. one hundred and seventy-six acres of land, described as follows, to-wit: The northeast fraction of the northwest quarter of section 2, of Glidden township, Carroll county, Iowa, containing fifty-eight acres; also, south half of northeast quarter; also, north half of north half of southeast quarter of section 2, in Glidden township, Carroll county, Iowa. The said Dr. B. C. Hamilton agreeing to give me, in payment for same, one house and four lots situated in S. & S. addition of Scranton, Iowa; also, sixteen head of shoats,—the above valued at one thousand seven hundred dollars; also, two thousand five hundred dollars worth of accounts and notes; the said J. T. Williams agreeing to return to the said B. C. Hamilton all money or accounts left after collecting the one thousand nine hundred dollars, the sum total being three thousand five hundred dollars; the said B. C. Hamilton guaranteeing the said amounts to be true and correct in all respects, and giving two years for collection, but not guaranteeing the payment of same.

B. C. HAMILMON,

J. T. X WILLIAMS,
his
mark.

"Witnesses: Charles Rowley, Nellie Rowley.

"Dated at Scranton City, Iowa, 2, 21, 1891."

Plaintiff claims that the contract was induced by fraud, in that defendant represented that the town lots were worth one thousand six hundred dollars, and had cost him that amount, whereas, in truth and in fact, they were worth and had cost but nine hundred dollars;

and that the accounts and notes referred to in the contract were correct, and were against persons of good credit and financial standing, and would be paid within one year, whereas, in truth, the said accounts and notes were incorrect and untrue, and were against persons of poor credit and standing. Plaintiff further alleged that defendant agreed to assign the notes and accounts to him as security for the payment of one thousand eight hundred dollars, inducing him to believe that such security would be better than a mortgage upon the property, and that, when the contract was reduced to writing by defendant, he (defendant) pretended to embody this condition therein, and stated to plaintiff (who is illiterate, and unable to either read or write) that the contract, as so written, contained all of the oral contracts previously made, whereas, in truth, it did not set forth the true agreement, but contained a clause absolving defendant from future liability on account of the notes and accounts; that defendant intentionally omitted from the written contract his oral promise to pay one thousand eight hundred dollars in cash within two years from the date of the contract, and his further promise to assign two thousand five hundred dollars worth of accounts and notes as security for this payment; and, taking advantage of plaintiff's ignorance, fraudulently and intentionally wrote the contract as it now appears; that plaintiff believed from defendant's statements that the written contract contained the oral agreement theretofore made, and was thereby induced to sign the same. Plaintiff further charges that he conveyed the land called for by the contract to B. C. Hamilton, who in turn conveyed the same to Maggie Hamilton, but that this last-named conveyance was made with intent to wrong and cheat him out of the purchase price. He further alleges that he received a conveyance of the town lots, the personal property called for by the contract, and an assignment of notes

and accounts, but that said notes and accounts were
not worth to exceed seven hundred and twenty dollars
and fifty cents, which was the amount actually collected
thereon.  He further pleaded a rescission of the con-
tract, and asked that defendants be ordered to reconvey,
or that the written contract be reformed to express the
true agreement of the parties, and that he have judg-
men for the remainder of the one thousand eight hun-
dred dollars agreed to be paid.  The trial court denied
the prayer for rescission, but decreed a reformation of
the contract, and awarded plaintiff the balance of the
one thousand eight hundred dollars.  As plaintiff is con-
tent with this conclusion, and does not appeal, we have
only to consider the correctness of the decree reforming
the contract.  If the decree is right as to the reforma-
tion, then it should be affirmed, for there is no doubt
that the award of compensation thereunder is correct.

It appears from the evidence that plaintiff is an
ignorant man, unable to read or write, and that defend-
ant gained his confidence through a claim of religious
brotherhood.  True, plaintiff had theretofore managed
a farm, in rather a small way, and had accumulated
sufficient to satisfy the necessities of life, with enough
remaining to induce him to seek life in town.  He was
introduced to defendant as one who had town property
to exchange for land.  After some negotiations, the
parties each viewed the lands and lots of the other, and
propositions pro and con were made, resulting in an
agreement for exchange.  Plaintiff valued his lands at
twenty dollars per acre; and defendant, his lots, at one
thousand six hundred dollars.  Finally it was agreed
that plaintiff's property was to be taken at three thou-
sand five hundred, and defendant's at one thou-
sand six hundred dollars.  Defendant was also to give
plaintiff personal property valued at one hundred dol-
lars, and was also to assign to him notes and accounts
to the amount of two thousand five hundred dollars,

Whether this assignment was absolute, or was intended as security for the remainder of the purchase price, is one of the questions in dispute. We are constrained to believe that plaintiff's version of the matter is correct—as it is the more reasonable—and that the assignment was to be as security for one thousand eight hundred dollars which defendant agreed to pay as the remainder of the consideration for the land. But this does not determine the controversy, for the reason that the oral contract was presumptively merged into the written one, which is set out at the beginning of this opinion, and, unless it was made under such circumstances as to justify its reformation, plaintiff must fail. We are well satisfied that plaintiff was mistaken as to the contents or legal effect of the instrument when he signed it. But this, in itself, is not sufficient to justify reformation. Defendant must also have been mistaken as to its contents or legal effect, or must, with knowledge of plaintiff's erroneous conclusion, have been guilty of such fraud or inequitable conduct as will justify reformation. After Hamilton had reduced the contract to writing, he read it to Williams, and Williams thereupon remarked that he did not just understand it; that there was one thing mentioned that it did not say anything about, as he understood it, and that was that, if he did not get his money in two years, he did not see anything about what Hamilton would do. To which Hamilton said, "Brother Williams, I guarantee it covers everything we have agreed on." Williams then remarked, "If that is so, it is all right," and thereupon signed the contract. This may have been a mistake of law, taken advantage of by Hamilton. But it is well settled that a mistake of law may, under certain circumstances, afford ground for relief in equity. *Lee v. Percival*, 85 Iowa, 639; *Winans v. Huyck*, 71 Iowa, 459; *Stafford v. Fetters*, 55 Iowa, 484, and cases cited.

Appellants contend, however, that appellee was negligent in signing the contract without informing himself as to its contents or legal effect, and that he cannot have relief. It must be remembered that appellee could neither read nor write, and that he was compelled to rely upon the appellant for a correct reading of the instrument. Had he signed it without informing himself of its contents, or had he signed after hearing it read, and without more, there is no doubt that his negligence would have barred him of recovery, under the rule announced in *Glenn v. Statler*, 42 Iowa, 107, and *McCormack v. Molburg*, 43 Iowa, 561, and other like cases. But the appellee did not do this. On the contrary, he called attention to what he supposed was an omission in the contract, and was assured by appellant that it covered everything agreed upon. Here, then, was a mutual mistake as to the legal effect of the terms used, or mistake on the part of appellee coupled with fraud or inequitable conduct on the part of appellant. Appellant knew that appellee was relying upon him to properly express the terms of the oral agreement in the writing, and it was his duty, under the circumstances disclosed, to correctly represent the condition and effect of the written instrument. In relying upon this representation, appellee was not negligent, and the instrument should be reformed to express the agreement as represented.

Appellants further contend that appellee afterwards ratified the agreement as written. A few days after the making of the agreement, the parties met to carry it out. Present at this meeting, besides the parties, was a notary public, and a minister of the denomination to which both belonged. Deeds and bills of sale were made out in execution of the contract, and the contract was read over to the parties. Just how Myers, the minister, came to be there, is not definitely shown, although we incline to the belief

that it was at the request of Williams to witness some of the papers. In any event, he signed one of the deeds as a witness. Just prior to the execution of the papers in consummation of the agreement, Williams and Myers withdrew to one side, and had some conversation about them. Myers did not, however, read the contract to Williams, nor is there any evidence that he explained, or attempted to explain, it to him. That he did look over the deeds and other instruments seems clear, but there is no evidence that he understood the purport of the written instrument, or that he in any way or manner indicated to Williams its effect. Before there could be any ratification on the part of Williams, it must appear that he knew and understood the contents of the paper which it is claimed he ratified. As there is no showing of any such knowledge, there was, of course, no ratification.

Appellant Maggie Hamilton contends that the decree, which established a lien upon the property for the amount of the judgment, is erroneous, for the reason that she is a *bona fide* purchaser for value, and without notice. An examination of the evidence leads us to believe that she was conversant with the terms of the oral agreement, and that the conveyance to her was in furtherance of an attempt to procure the property without paying an adequate consideration therefor.

We have gone to the transcript for a better understanding of the record, and, while we have not attempted to set out the evidence upon which we base our conclusions, we have given the case careful consideration, and find the ultimate facts to be as stated. There are many circumstances, small in themselves, which point to the correctness of the conclusion reached. And, as the decree of the district court is manifestly equitable and just, it is AFFIRMED.