NEW YORK LIFE INSURANCE COMPANY *v.* FRANK H. KIMBALL.

January Term, 1918.

Present:   WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 25, 1919.

*Life Insurance—Failure to Pay Premium—Indorsement Continuing Policy Not a Contract—Equity—Reformation of Instruments—Mutual Mistake—Mistake Warranting Relief—Opinions—Law of the Case.*

The insured failed to pay the premium due on a life insurance policy and also failed to avail himself of the option in the policy providing for its continuance on the happening of such contingency. Thereupon the company computed the amount due upon the policy and the time it was to continue in force, and made an indorsement on the policy continuing it for a certain amount for a specific period. *Held,* that the policy was the only contract between the company and the insured; that the indorsement was not a contract, but an act of the company in no way participated in by the insured.

The company made a mistake in computing the term of the continuance of the policy. The insured did not know of the mistake during his lifetime and did not even believe that a mistake had been made, and the company did not discover it until after his death. *Held,* that the mistake was not mutual, but unilateral, and that equity would not reform the indorsement.

The law of a case cannot be determined from a brief quotation of portions of the opinion separate from its facts, especially where the law upon the subject has many exceptions.

Equity will lend its aid to correct (1) mistakes where the mistake is mutual, (2) where only one of the parties is under mistake due to the fraud, deceit, or imposition of the other, (3) where only one of the parties is under mistake not due to the fraud of either party, and (4) where only one of the parties is under mistake through no fault of the other, but solely through his own negligence.

Where the mistake is mutual, or where the mistake of one party is due to the fraud, deceit, or imposition of the other, equity will unhesitatingly afford relief, either in reforming or cancelling the mistaken agreement.

Where the mistake of one party is the result of his own negligence or inattention, equity will refuse its aid except under very strong and extraordinary circumstances showing imbecility or something that would make it a great wrong to enforce the agreement.

APPEAL IN CHANCERY.    Bill to reform or cancel an indorsement upon a policy of insurance upon the life of Charles B. Kimball, in which the defendant is beneficiary. Heard on demurrer to the bill at the September Term, 1917, Chittenden County, *Fish*, Chancellor. Decree, sustaining the demurrer adjudging the bill insufficient, and dismissing it with costs. Plaintiff appealed.

The policy in question was written on February 5, 1908, on the ordinary life plan, for the sum of $1,500, payable to the defendant as beneficiary upon the death of the insured.

The policy required the payment in advance of a semiannual premium of $28.72 on the 5th days of August and February in each year. November 11, 1910, the insured borrowed from the plaintiff the sum of $64 on the pledge of said policy as collateral security, and deposited the policy with the plaintiff as such pledge. The insured paid the semiannual premium due under said policy up to and including February 5, 1912, but failed to pay the semiannual premium due on August 5, 1912, or to pay the interest on said loan. The policy thereupon lapsed, and the insured became entitled to extended paid-up insurance, which, calculated upon the basis, upon the terms, and by the methods provided in said policy, was $1,451 for two years and

three hundred and forty-two days, from August 5, 1912, and expired on July 13, 1915.

In August, 1913, the plaintiff undertook to calculate said extended insurance benefit and indorsed said policy for what it supposed and intended to be such benefit, and on August 6, 1913, mailed the policy to the insured, and thereafter the policy remained in the possession of the insured or the defendant. By mistake the policy bore the indorsement of extended insurance stated in the opinion.     The insured died on January 15, 1916.

The plaintiff made said mistake in calculating said extended insurance, in that its clerk at its home office, in computing said extended insurance, gave said policy credit for 1913 dividends amounting to $15.95 based upon the payment of the 1912 premium on said policy, whereas said dividends were only declared by the plaintiff on all the policies of the class to which said policy belonged if the 1912 premium was paid, which premium on this policy was not paid.

The plaintiff did not discover its mistake in its calculation of said insurance, and in said indorsement until about July 29, 1916, and after it received proofs of the insured's death. Plaintiff then rechecked its figures according to its custom, and thereupon discovered said error and informed the defendant thereof.

*Theo. E. Hopkins* for the plaintiff.

*E. C. Mower* and *Chas. H. Darling* for the defendant.

MILES, J.    This is a bill in chancery to reform or cancel an indorsement upon a policy of insurance upon the life of Charles B. Kimball, in which the defendant is beneficiary.    Upon failure to pay the premium as the same fell due and to avail himself of certain options provided for the insured in case of failure to pay the premium, the policy, in substance, provided that the insured should have insurance for the face amount of the policy plus any outstanding dividend additions and less any indebtedness to the company thereon, said policy to continue in force from the date of default in the payment of the premium, for such time as the cash surrender value will purchase as a net single premium at the attained age of the insured, according to the American Table of Mortality, at the rate of three per centum per annum.

The insured failed to pay the premium falling due August 5,

1912, and also failed to avail himself of the options in the policy, whereby he became, under the terms of the policy, entitled to only its continuance and amount under the terms stated above.

On August 4, 1913, the plaintiff, by the clerk of its actuary, having computed the amount due on the policy and the time it was to continue in force, indorsed upon the policy as follows: ''In accordance with the terms of the loan agreement of the second day of November, 1910, and on account of default in the payment of August 5, 1912, premium and loan interest, this policy is continued for the reduced amount of $1,479 for a term of three years 274 days from August 5, 1912, to May 6, 1916. New York, August 4, 1913.''

The indorsement was duly executed by the plaintiff, and is the one which the plaintiff seeks to have reformed or cancelled because, as alleged in the bill, there was a mistake in the computation of the amount due on the policy and the time of its continuance from the date of default in payment of the premium. The plaintiff treats this indorsement as a contract; but to this we do not agree. It was not a contract, but a mere act of the plaintiff, in no way participated in by the insured. The policy which was the only contract between the plaintiff and the insured, provided, in the contingency that happened, for an extended insurance in an unascertained amount for an unascertained term. The bill alleges want of knowledge or information as to the elements entering into the computation necessary to ascertain these matters. It is fairly inferable from the facts alleged that the computation required highly technical knowledge possessed only by the plaintiff's actuary department, and that it must be based upon data wholly within the plaintiff's control. The subject-matter was such that the insured could not have, nor possibly be expected to have, any knowledge of the elements entering into the computation. Viewing the indorsement in its true light as the sole act of the plaintiff, much of the difficulty disappears. While it is not alleged in terms that it was the plaintiff's duty to compute the extended term and indorse the result on the policy, it fairly appears that such was the fact.

While both parties supposed that the indorsement extended the policy for the agreed term, the mistake which defeated this purpose was not a mistake in the indorsement; for that was in accordance with the computation. The mistake was back of the

indorsement and was in a matter necessarily intrusted to the plaintiff alone. The root of the trouble complained of was a mistake manifestly unilateral, and not mutual.    The supposition that the indorsement extended the policy for the correct term does not make the mistake in this case mutual; for the bill fails to show that the insured at any time during his life knew or had reason to know that any mistake had been made in the computation of the amount due on the policy, or the length of time it had to run.    Indeed the bill negatives any inference to that effect. *Fife & Child* v. *Cate*, 85 Vt. 418, 82 Atl. 741, is full authority for holding that the allegation of want of knowledge makes the mistake unilateral.    To give mutuality to a mistake in the sense referred to, the mistake must be reciprocal and common to both parties to the contract or written instrument.    10 R. C. L. 300, par. 44; *Page* v. *Higgins,* 150 Mass. 27, 22 N. E. 63; 5 L. R. A. 152, and note.    In *Page* v. *Higgins* it is said:    ''The phrase 'mutual mistake', as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents or the legal effect of the .contract or instrument.''    See the long list of authorities cited in support of this statement.    To make a mistake mutual it must result from an act of both parties which neither intended (*Hearne* v. *N. E. Mutual Marine Ins. Co.,* 87 U. S. [20 Wall.] 488, 22 L. ed. 395), and the minds of the parties must have met in the consummation of the mistaken contract, and the mistake must have been shared in by both parties. *Saloman* v. *Ins. Co.,* 215 N. Y. App. Div. 214, 109 N. E. 121, L. R. A. 1917 C, 106, cited by the plaintiff; Pomroy's Eq., Vol. 4, sec. 1376; *Hearne* v. *N. E. Mutual Marine Ins. Co., supra.*

Authorities upon this point need not be multiplied, for the plaintiff, citing many authorities, defines it as defined above, and seeks relief on the ground of mutual mistake, but claims that this case falls within the rule laid down in those cases.    The plaintiff overlooks the allegation in its bill that the insured was totally ignorant of the mistake, or it would not rely upon the authorities which it cites; for they rest upon the rule, such as touch upon it, that a mistake by one party, coupled with ignorance of the other party, does not constitute a mutual mistake.    See also 23 Harvard Law Review, beginning on page 608, and particularly page 612, where it is stated: ''A mistake by one

party, coupled with ignorance thereof by the other party, does not constitute a mutual mistake.''

On page 613 of the same volume it is said: ''A mistake by one party, and a belief by the other party, that there has been a mistake, make a pair of different mistakes, and not a mutual error.'' To the same effect are *Steinmeyer* v. *Schroeppel*, 226 Ill. 9, 80 N. E. 564, 10 L. R. A. (N. S.) 114, 117 Am. St. Rep. 224, and *Grant Marble Co.* v. *Abbott*, 142 Wis. 279, 124 N. W. 264.

In the case at bar the insured knew nothing about the mistake, as we have already seen, and though he may have believed that a mistake had happened, which the case does not show, under the authorities above cited, the mistake relied upon by the plaintiff would not be a mutual mistake. Much less would the indorsement as made be a mutual mistake, even if treated as a contract, the case showing, as it does, that the insured knew nothing of the alleged mistake, and the exceptions not showing that the insured even believed that a mistake had been made in connection with the indorsement.

This case should be carefully distinguished from one where a party, at the request of the other, does an act in which both are interested, and in doing it made a mistake to the injury of the other party; for in such case the party doing the act is acting for both, and the mistake is that of both and is mutual, the same as where a scrivener, acting for both parties, makes a mistake, the mistake, though made by the scrivener alone, is the mistake of the parties for whom he acts and is mutual. This case should also be distinguished from those cases where the mistake is that of one of the parties which has occurred from no fault of either party, but not through the inattention of the party seeking relief.

In the reports of our own State, as well as in the reports of other states, may be found opinions from which quotations can be made, as called to our attention in this case, in substance as follows: ''The fact is that, where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement.''

The quoted portions of such opinions, no doubt, state the law

of the case in which they appear, but it will be found upon the examination of those cases that the quoted portions of such cases are addressed to the particular facts of the case in which they are made, and were not intended to lay down a general rule of law upon the subject of equitable power in the reformation of written instruments. The law of a case cannot be determined from a brief quotation of portions of the opinion separate from the facts of a case, especially where the law upon the subject has many exceptions, as in the subject now under consideration.

To correct and relieve against mistakes, where a party has not a plain and adequate remedy at law, is, and always has been one of the principal objects and most ordinary duties of courts of equity; but the instances in which equity may lend its aid to correct mistakes may be divided into four classes: First, where the mistake is mutual as to the facts upon which it is based, or as to the terms and stipulations embraced therein; second, where only one of the parties is under such mistake, either of the facts or stipulations, and such mistake has been occasioned by the fraud, deceit, or imposition in any form of the other; third, where only one of the parties is under such mistake, and this has occurred from no fault of either party, but not through the negligence or inattention of the party seeking relief; and fourth, where only one party is under such mistake, and this has occurred from no fault of the other, but solely through the negligence and inattention of the party seeking relief. In the first two classes, equity will unhesitatingly afford relief, either in reforming or cancelling the mistaken agreement. In the third class equity will withhold its aid if the mistake is the result of negligence or inattention; and in the fourth class equity will refuse its aid, except under very strong and extraordinary circumstances, showing imbecility or something that would make it a great wrong to enforce the agreement. *Kennerty* v. *Etiwan Phosphate Co.*, 21 S. C. 226, 53 Am. Rep. 669.

This case does not fall under the first class, for we hold that the mistake was not mutual. The mistake not being mutual, equity will not reform the certificate indorsed on the policy. *Williams* v. *Hamilton,* 104 Ia. 423, 73 N. W. 1029, 65 Am. St. Rep. 475, and note; *Crosby* v. *Andrews,* 61 Fla. 554, 55 South. 57, Ann. Cas. 1913 A, 420; *Capital City Bank* v. *Hilson,* 64 Fla. 206, 60 South. 189, Ann. Cas. 1914 B, 1211; *Vallentyne* v. *Immigration Land Co.,* 95 Minn. 195, 103 N. W. 1028, 5 Ann. Cas

212; *Grieve* v. *Grieve,* 15 Wyo. 358, 89 Pac. 569, 9 L. R. A. (N. S.) 1211, 11 Ann. Cas. 1162; *Chute* v. *Quincy,* 156 Mass. 189, 30 N. E. 550.

This case does not come under the second class, for the bill does not allege nor does anything in it tend to show that the insured was guilty of fraud, deceit, or imposition, and the plaintiff does not claim it. Equity will, therefore, not aid the plaintiff under this class.

The plaintiff does not by its bill bring itself within the right to relief under the third class; for a party fully competent to protect himself, under no disability, advised as to all the circumstances by which he may be saved in his rights, or in a situation where he might by due diligence be so advised, not overreached by fraud, concealment, or misrepresentations, nor the victim of a mistake against which prudence might have guarded has no right to call upon the court to protect him. *Kennerty* v. *Etiwan, supra.* See note in *Williams* v. *Hamilton, supra.* This Court has fully settled the law in the respects above stated and laid down the rule that courts of equity do not relieve a party from the results of his own carelessness and negligence which are in no way induced by the conduct of the other party. *McDaniels* v. *Bank of Rutland et al.,* 29 Vt. 230, 70 Am Dec. 406; *Hyde* v. *Hyde,* 50 Vt. 301; *Bishop* v. *Allen,* 55 Vt. 423; *Francis* v. *Parks,* 55 Vt. 80; *Durkee* v. *Durkee,* 59 Vt. 70, 8 Atl. 490; *Town of Ripton* v. *Mcquivey's Admr.,* 61 Vt. 76, 17 Atl. 44. In the case at bar the actuary's clerk made the certificate which the court of chancery is asked to reform with full knowledge that the premium of August 5, 1912, had not been paid; for he states in the certificate which gives the result of his computation that that premium was defaulted. With that information before him he made the indorsement. This was not only negligence, but gross negligence, and to grant relief in such a case would open the door to a class of cases heretofore unheard of in a court of equity. No claim is made under the fourth class, and we give that no consideration.

The plaintiff's discussion of this case has been principally directed to the power of the court of chancery to reform a written instrument containing a *mutual mistake,* claiming that the indorsement in question gave to the insured too large a sum and extended the policy for too long a term, as a result of a *mutual mistake;* but the real question involved is whether the bill alleges

facts showing such a mistake, and the holding of the majority that it does not contain such facts makes it necessary to sustain the decree below.

*Decree affirmed, and cause remanded.*

POWERS, J., dissenting.   The majority say that the indorsement on the policy is not a contract, and that the policy itself is the only contract between the parties to it.   To this I agree, and if the opinion of the majority had stopped there, this dissent would not have been written.   It seems to me that the policy is the contract, and the indorsement a mere admission of the company; evidence against it, to be sure, as to how the provision for extended insurance works out.   Like any other admission, it is subject to explanation and contradiction; and if it is the result of an error in computation, it should be disregarded by the trier. In this view of it, the company can as well assert the truth in making its defence to an action on the policy, and reformation is not necessary to save its rights.   But the majority proceed to discuss the law as if the indorsement was a contract, and give expression to views which I cannot indorse.   So I deem it best to express my own.

The case stands on a demurrer, and it seems to me that the bill makes a typical case of mutual mistake within the meaning of the law.   If the error in the computation had found expression in the terms of the original policy contract, the reasoning of the majority might be sound.   But the case presented is very different.   Here is a case where the parties had a previous written contract, and the indorsement was intended and supposed by both to carry into effect a specific provision of that previous contract.   Both parties intended that it should express in definite terms just what was expressed in general terms in the policy.   If the insured obtained by it less than the policy promised he should have, he was wronged.   If it gave him more than the policy promised, he received that for which he paid nothing, and the company was wronged.   Not only did both parties intend that the indorsement should speak the exact language of the policy, but *they both supposed that it did.*   But it did not.   Here, then, is a mistake common to both, the mistaken idea that the indorsement carried into effect the terms of the policy.   On the plainest principles of equity, reformation should be granted.

Suppose I owe you a promissory note which is about to outlaw, and you apply to me to renew it. I assent, and you figure up the old note and make a new one for the amount found due. I sign the new note and take up the old one. It turns out that you made a mistake in your computation, and the new note is for a less sum than was due. Can it be that a court of equity would turn a deaf ear to your application for relief?

Suppose, in figuring up your book account against me, you make a mistake against yourself, and intending to cover the account correctly, we sign a settlement which states the balance due at a sum $100 too small. Must you lose this amount?

Suppose that in making this very indorsement, a typist, by striking the wrong key, had made the amount "$1,579" instead of "$1,479"; suppose that a clerk in making this indorsement, intending to write "$1,479.00," had by mistake left out the point and written "$147900."

In discussing the subject of mistake as a basis of equitable jurisdiction, Mr. Pomeroy says that such mistake "may arise after the parties have verbally concluded their agreement, and may occur in reducing that agreement to writing, by erroneously adding, omitting, or altering some term" (2 Pom. Eq. sec. 853), and that equity has jurisdiction to reform written instruments "where there is a mutual mistake, that is, where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto. * * * In such cases, the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties." 4 Pom. Eq. sec. 1376.

This rule has long been recognized in England. "No doubt," says Lord Chancellor Hardwicke in *Henker* v. *Royal Exchange Assurance Co.*, 1 Ves. 317, "but this Court has jurisdiction to relieve in respect of a plain mistake in contracts in writing, as well as against frauds in contracts, so that , if reduced into writing contrary to intent of the parties, on proper proof, that would be rectified." And in *Murray* v. *Parker*, 19 Beav. 305, it is said: "In matters of mistake, the court undoubtedly has jurisdiction; and, though this jurisdiction is to be exercised with great caution and care, still it is to be exercised in all cases where the deed, as executed, is not according to the real agreement between the parties."

The rule is stated by Mr. Justice Washington in *Hunt* v. *Rousmaniere's Admrs.*, 1 Pet. 1, 7 L. ed. 27, as follows: "There are certain principles of equity applicable to this question which, as general principles, we hold to be incontrovertible. The first is that, where an instrument is drawn and executed, which professes, or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement."

To the same general effect are *Equitable Safety Ins. Co.* v. *Hearns*, 87 U. S. (20 Wall.) 494, 22 L. ed. 398; *Snell* v. *Atlantic F. & M. Ins. Co.*, 98 U. S. 85, 25 L. ed. 52; *Walden* v. *Skinner*, 101 U. S. 577, 25 L. ed. 963; *Elliott* v. *Sackett*, 108 U. S. 132, 27 L. ed. 678, 2 Sup. Ct. 375; *Thompson* v. *Phenix Ins. Co.*, 136 U. S. 287, 34 L. ed. 408, 10 Sup. Ct. 1019; *Ackerlind* v. *United States*, 240 U. S. 531, 60 L. ed. 783, 36 Sup. Ct. 438. For further approval of the rule and illustration of its application, reference may be had to *Goode* v. *Riley*, 153 Mass. 585, 28 N. E. 228; *Park Bros. & Co.* v. *Blodgett*, 64 Conn. 28, 29 Atl. 133; *Higinbotham* v. *Burnett*, 5 Johns. Ch. (N. Y.) 184, 1 L. ed. 1050; *Truesdell* v. *Lehman*, 47 N. J. Eq. 218, 20 Atl. 391; *Gould* v. *Emerson*, 160 Mass. 438, 35 N. E. 1065, 39 Am. St. Rep. 501; note to *Williams* v. *Hamilton* (Iowa) 65 Am. St. Rep. at page 482; note to *Steinmeyer* v. *Schroeppel* (Ill.) 117 Am. St. Rep. at page 229.

While I have made no extended search for cases to substantiate my views, the following are at hand: In *Gray* v. *Supreme Lodge K. of H.*, 118 Ind. 293, 20 N. E. 833, it appeared by the answer that the defendant issued two classes of certificates; that, when a member paid $4, he was entitled to a benefit certificate for $2,000, but, if he paid $2, he was only entitled to a certificate for $1,000. The decedent paid only $2, but, by mistake of the defendant's representative, a benefit certificate payable to the plaintiff was issued for $2,000, instead of $1,000, as it should have been. It was held that these allegations clearly showed a mutual mistake, which might be corrected. It is also shown by this case that it made no difference whether the insured knew of the mistake or not. That reformation would be granted in either case. Moreover, this case shows that, when the mis-

take is not discovered until after the death of the insured, the policy will be reformed to meet an action by the beneficiary.

In *Eastman* v. *Provident Mutual Relief Assn.*, 65 N. H. 176, 5 L. R. A. 712, 23 Am. St. Rep. 29, both parties intended that the benefit certificate should be payable to the insured's administrator, but by mutual misapprehension of the legal effect of the language used it was not. It was held that even after the death of the assured the certificate should be reformed. "Equity," says Judge Carpenter, "requires an amendment of the writing that will make the contract what the parties supposed it was and intended it should be, although their mistake is one of law and not of fact."

*McMullen* v. *Lockwood*, 4 Del. Ch. 568, is much like one of the illustrations used above. In settling their affairs, the parties reached a balance of $1,117.09, which both supposed to be the correct sum due to the defendant. This was not true. A mistake had been made in computing the account, and the true balance was $221.69. Relief was granted.

*Buck* v. *Equitable Life Assur. Co.*, 96 Wash. 683, 165 Pac. 878, goes farther than we are here asked to go. The policy there involved contained this option: "If the assured be living and this policy is in force on the 22d day of December, 1915, the said assured, or assigns, may surrender the policy to the society and draw the guaranteed cash value of $1,000, together with," etc. At the expiration of the time named, the assured notified the society of his election to surrender the policy and take the surrender value. The action was on the policy, and the defendant set up in its answer that the sum of $1,000 was not the correct surrender value, and that it was inserted by mistake, that the correct sum was $408, and reformation was asked for. Relief was granted in that case, but I am unwilling at this time to approve that result. The mistake was in the policy itself, while here it was in an indorsement. I refer to the case to show to what extent the courts are going to relieve from the consequences of such mistakes and the unmistakable trend of judicial thought.

There is no jurisdiction, perhaps, in which the decisions sustain my views more consistently than our own. We have approved and applied the rules above referred to in many cases.

"A court of equity," says Judge REDFIELD in *Beardsley* v. *Knight*, 10 Vt. 185, 33 Am. Dec. 193, "will always correct mistakes. * * * If it be clearly shown that the parties did not

effect what they intended to do, a court of chancery will perfect the intention.''

In *Brown* v. *Lamphear*, 35 Vt. 252, a vendor forgot to except from his conveyance a spring of water which was of great value to him. And although the purchaser knew nothing about the spring until after the purchase, relief in equity was granted. This case is interesting from the fact that the mistake relied upon was wholly unilateral, and in this respect exceptional and extreme.

In *Tabor* v. *Cilley*, 53 Vt. 487, the mortgage in question was read over to the parties, and they were satisfied with it. In fact, it did not secure all the notes they intended to have it cover. The court said that the ''jurisdiction of a court of equity to reform a contract and make it conform to the actual agreement of the parties is well established,'' and granted relief.

In *May* v. *Adams*, 58 Vt. 74, 3 Atl. 187, the owners of a piece of land agreed upon a division of it, but the conveyance executed to carry their agreement into effect, by a misdescription of the dividing line, failed to do so. Reformation was granted.

In *Dietrich* v. *Hutchinson*, 73 Vt. 134, 50 Atl. 810, 87 Am. St. Rep. 698, Judge ROWELL, taking his rule from *Hunt* v. *Rousmaniere's Admrs.*, *supra*, says: ''It is an unquestionable principle of equity, that when an instrument is drawn and executed that was intended to carry into effect an agreement previously made, but which by mistake of the draftsman, either as to law or fact, does not fulfill the manifest intention of the parties, equity will afford relief. * * *''

In *Hoyt* v. *Hoyt*, 77 Vt. 244, 59 Atl. 845, wherein the mistake was made by the draftsman, the rule was applied and reformation granted.

In *Abbott* v. *Flint's Admr.*, 78 Vt. 274, 62 Atl. 721, Judge TYLER says that ''a court of chancery will correct mistakes in conveyances, when clearly and unequivocally proved, and make the instrument such, both in form and effect, as will fulfill the intention of the parties,'' He also says that the rule is ''aptly stated'' thus: ''When through ignorance, inadvertence, negligence, or otherwise, the description in a deed does not in fact embrace the land which the parties intended it should, and which they supposed it did, it is considered a mistake of fact, and the description can be reformed, though it is exactly as the parties intended it should be.''

In *Churchill* v. *Capen*, 84 Vt. 104, 78 Atl. 734, the rule as stated in 2 Pom. Eq. sec. 870, is quoted and approved, but for shortage of findings relief was not granted.

I hardly need say that the references to the mistake of the draftsman in the cases referred to above are mere adaptations of the rule to the cases in hand. It makes no difference who is morally responsible for the mistake. It may have been a stranger; it may have been a party. If the instrument fails to state the contract as previously agreed upon, equity will make it. It is utterly immaterial that the party responsible for the oversight or error is the one here seeking relief. *Ball* v. *Storie,* 1 Sim. & St. 210; Williston's Wald's Pollock, Contracts, 636, 639. It is true that the mistake must be mutual; it must be common to all. But this does not mean that each must have an active part in the particular act which results in the error. It is enough if the record shows "a common intention different from the expressed intention, and a common mistaken supposition that it is rightly expressed." Williston's Wald's Pollock, 639. The allegations of this bill make just such a case. The parties intended to carry out the terms of the policy. Their intention differed from that expressed in the indorsement. They both mistakenly supposed that their intention was correctly expressed in the indorsement.

In dealing with these cases equity will proceed with caution, and will require clear proof. It will make its relief conform to the circumstances and apply it in different ways. *Dietrich* v. *Hutchinson, supra.* See, also, the decree in *Brown* v. *Lamphear, supra,* where this is well shown. But it will not withhold relief in any meritorious case.

Lest it be taken that I have overlooked it, I may say that I do not discuss the doctrine of rescission, which is involved, since no point is made of it in argument or in the opinion of the majority.

Nor do I agree that there is any question of negligence involved, and especially none that could be ruled as matter of law. While it might be said that one who adds 2 and 2 and gets 5 is guilty of negligence as matter of law, it cannot be so said of one who makes a mistake in a complicated mathematical problem. If one who is struggling with the needless perplexities of our archaic "Vermont Rule" should inadvertently leave out a small payment on the note he was computing, it could hardly be said as matter of law that he failed to use the care of a prudent man.

As the majority opinion says, the computation here involved "required highly technical knowledge possessed only by the plaintiff's actuary department." How, then, can this Court, knowing nothing of such matters, say that the company's clerk was negligent?

The Vermont cases referred to by the majority are not in point. They do not refer to a case like this. Though courts and text-writers speak of negligence in connection with these cases, a careful analysis of the authorities shows that in otherwise meritorious cases negligence only affects the right to relief when it amounts to a positive legal duty. 2 Pom. Eq. 856; see *Abbott v. Flint's Admr., supra.* The prudent man rule does not apply. Each case is to be judged on its own facts.

*I would reverse the decree and remand the case.*