CHARLOTTE THOMPSON and Another v. E. I. DUPONT COMPANY and Others.[1]

March 22, 1907.

Nos. 14,908—(139).

**Action to Redeem—Mistake of Wife.**

    The title to land stood in the name of husband and wife. Judgment was entered in divorce proceedings, inter alia, that the husband was its owner, and that the wife's award of alimony in a fixed sum should be a

[1] Reported in 111 N. W. 302

specific lien thereon. The land was sold under execution, and a certificate of sale delivered to the wife. An intending purchaser demanded a quitclaim deed from the wife, in addition to an assignment of the certificate. She executed the deed. Before the year for redemption expired the husband and wife brought an action against the purchaser to set aside the sale, certificate, and quitclaim deed, or to be allowed to redeem. The basis of the equitable relief was that the quitclaim deed was executed under misapprehension by the wife, that the title to the land had stood in the name of the husband and wife jointly, and that the purchaser, constructively knowing this, had wrongfully concealed the facts or failed to correct the wife's error. The vendors were entitled to no relief on the ground of mutual mistake, or mistake by one party and fraud on the other, because the mistake, if it existed, was on the part of the wife only, and there was no fraud, actual or constructive, on the part of the purchaser.

**Legal and Equitable Estate.**

The doctrine of subordination of a legal estate acquired after and with notice of an earlier equity did not apply, because there was no pre-existing equity in the vendor.

**Mistake by One Party.**

The vendor did not come within the principle that equity may rescind, though it will not reform a contract in case of mistake by one party only, because the judgment vested the title to the land in her husband and could not be impeached collaterally. From the record it did not appear that she was mistaken in her belief, when she executed the deed, that she had an undivided one-half interest in the land, in addition to her interest in the sheriff's certificate.

**Redemption from Execution Sale—Complaint.**

A complaint in an action to redeem from an execution sale, which alleged a compliance with chapter 326, p. 733, of the Laws of 1895, by setting forth a sufficient deposit and bond, is valid, and extended the time for redemption, although it did not appear therein that the parties seeking to redeem had produced to the clerk or sheriff the deed under which he claims the right to redeem, as required by section 5474, G. S. 1894.

Appeal by defendants E. I. Dupont Co. and F. D. Orr from an order of the district court for St. Louis county, Cant, J.; denying a motion for judgment or for a new trial, after a trial and findings in favor of plaintiffs. Reversed and remanded for further proceedings.

On July 6, 1904, the respondents and plaintiffs, man and wife, were divorced by a decree of the district court of St. Louis county, awarding

the wife judgment of alimony against the defendant in the sum of $659.81, which by decree of the court was made a specific lien on the premises in question. The verified complaint in the divorce proceedings alleged that the land was owned by both. As a matter of fact the property stood upon the records in the name of both husband and wife. The court found as a fact that the husband owned it. The judgment against the husband was duly docketed on July 16, 1904, and was assigned to an attorney for the wife to secure advances made to her by him. Execution was taken out on the judgment, and the land sold to that attorney. A sheriff's certificate of sale was issued to him on December 3, 1904. It was undisputed that the real owner of that certificate was the wife. The certificate was offered for sale to the defendants and appellants about March 14, 1905. Later an abstract of title was delivered to the defendants' attorney. An examination of the title showed that the land had been owned jointly by the husband and wife before the decree in the divorce proceedings. Defendants refused to purchase the certificate unless the wife would also give a deed of her interest in the property. These were all the negotiations. Later a deed from the wife, together with an assignment of the certificate, was delivered to the defendants, who paid $697.59, substantially all of which was received by the wife. No representations of any sort were made by any of the parties to the transaction. The full value of an undivided one-half interest only was paid. On or about October 26, 1905, plaintiffs brought an action in the district court of St. Louis county to adjudge the deed from the wife to defendants void, and to set aside the same, and to hold the same and the record thereof for naught, based upon the allegation that the deed was obtained through fraud, because the wife did not know that she owned a half interest in the land at the time of executing the deed, and received no consideration for it. Judgment was also demanded that the court decree that the execution sale and sheriff's certificate be set aside and canceled. The complaint offered to return the amount of consideration mentioned in the deed. On trial the court found that the wife received the money paid for the land, but that the deed was given by her under misapprehension and mistake as to her interest in the land, and that the deed and assignment and the execu-

tion sale should be set aside. This appeal was taken from the order of the court refusing to direct judgment to be entered for defendants or to grant a new trial.

*H. R. Spencer,* for appellants.

*James A. Hanks,* for respondents.

JAGGARD, J. (after stating the facts as above).

The first question concerns the legal correctness of the conclusion of the trial court that, while there were no fiduciary relations between the parties and while they were dealing with each other at arm's length, still the defendants had such knowledge of the misapprehension of the wife as to her rights when she made the deed as would make it inequitable for defendants to retain the title obtained through the deed. Through the same error, in which the husband participated he was placed at a great disadvantage in making any attempted redemption from the execution sale, and could not proceed in safety to take such step. The question, however, is, not whether it would have been inequitable in a colloquial sense for the defendants to have taken the deed without formally advising the wife in person of her misapprehension, but whether the case comes within any recognized doctrine of equitable jurisprudence, liberally construed.

1. The plaintiffs are not entitled to equitable relief because of a mutual mistake, or mistake by one party and fraud by the other. In this case there was not a semblance of mistake on part of the grantees, the defendants. On the contrary, it affirmatively appears that they knew of the condition of the title, and for that reason insisted upon a quitclaim deed from the wife.

The question, then, is whether the record shows a fraud on the part of the purchaser or of his attorney. We think it does not. The trial court itself recognized that this was an ordinary transaction in which the parties dealt at arms' length. All that the defendants knew was the state of the record title. The plaintiffs had exactly the same means of knowledge, and other knowledge of the history of the purchase of the land, and the wife knew that the quitclaim was insisted upon. It would be unprecedented and unreasonable to hold the attorney for a purchaser to the exercise of higher diligence and greater astuteness to protect the interest of the vendor than the vendor's own counsel.

The record, however, shows that the vendor's counsel not only acted uberrima fide, but with entirely adequate and proper regard for his client's interests throughout the whole litigation. We do not regard it as essential whether the real estate agent was the representative of the wife or representative of the purchaser. The fact, however, that the attorney for the defendants told that agent of what he had learned as to the title removes any possible suggestion of sharp dealing or of any intent to overreach. The attorney for the purchaser had done everything that the law or good practice or good morals required him to have done in the premises.

2. The basis of plaintiffs' argument in this connection is that, inasmuch as the mistake which they assume to have existed was known to the vendees, but was by them concealed or not corrected, they are not innocent purchasers for a valuable consideration without notice of prior existing equities in favor of the vendors. The equitable doctrine which they invoke is this: "Among successive interests wholly equitable, and between an earlier equity and a subsequent legal estate, even when purchased for a valuable consideration, the one who acquires the subsequent estate or interest with notice of the earlier equity in favor of another person will hold his acquisition subject and subordinate to such outstanding interest or right." 2 Pomeroy's Eq. Jur. § 730. Here, however, the vendors did not conceal their knowledge and were not bound to correct a misapprehension of the existence of which they did not actually know. No equity existed to which their legal rights were to be subordinated.

3. There is more doubt whether the vendors' case does not come within the rule that, while an instrument may not be reformed, it may be rescinded or canceled for the mistake of one party only. Mortimer v. Shortall, 2 Drury & War. 372; Hearne v. Marine Ins. Co., 20 Wall. 488, 491, 22 L. Ed. 395; Dulany v. Rogers, 50 Md. 524. A historical statement of the rule is that of Lord Thurlow in Calverley v. Williams, 1 Ves. Jr., 211: "No doubt, if one party thought he had purchased bona fide, and the other party thought he had not sold, that is a ground to set aside the contract, that neither party may be damaged, as it is impossible to say one shall be forced to give that price for part only which he intended to give for the whole, or that the other shall be obliged to sell the whole for what he intended to be the price of part only.

Upon the other hand, if both understood the whole was to be conveyed, it must be conveyed; but again, if neither understood so, if the buyer did not imagine he was buying, any more than the seller imagined he was selling, this part, then his pretense to have the whole conveyed is as contrary to good faith upon his side as the refusal to sell would be in the other case. The question is, does it appear to have been the common purpose of both to have conveyed this part?" See 1 Story, Eq. Jur. § 144. A briefer statement is to be found in Diman v. Providence, 5 R. I. 130, 137: "A court of equity has also power to rescind and cancel an agreement at the request of one party upon the ground that without negligence he entered into it through a mistake of facts material to the contract, when it can do so without injustice to the other party." It may be seriously questioned whether the wife in this case was not negligent in not knowing what she conveyed. Moreover, she did intend to quitclaim her interest.

The case at bar is obviously different from deeds including more land than the vendor intended to convey, as in Harris v. Pepperell, L. R. 5 Eq. 1; or from the absolute conveyance, for example, which in fact deprived the vendor from right to use water from a spring which she did not intend to part with, and of the existence of which the vendee did not know, as in Brown v. Lamphear, 35 Vt. 252. There is also a plain distinction between the present case and Benson v. Markoe, 37 Minn. 30, 33 N. W. 38, 5 Am. St. 816. There Benson gave a quitclaim deed, intending to convey to Markoe a part of the tract originally sold to the latter by the former, but not, as Markoe represented, in fact conveyed by the original deed. Benson did not intend to release a mortgage which Markoe had given him to secure a part of the purchase price. The court limited the operation of the quitclaim deed to the conveyance of the premises intended. Here the wife intended to convey, as she did, whatever interest she had. Although a quitclaim deed was called for, she did not inquire, efficiently at least, concerning its occasion.

In point of fact, however, she conveyed no interest by the quitclaim deed. Whatever interest she had was in the sheriff's certificate. She and her husband were parties to an action, in which both she and her husband appeared and in which was fully litigated what property her husband owned, in respect to a matter then before the court for de-

termination, namely, the amount of alimony. The complaint alleged that both the plaintiff and defendant owned the land in question. The court found specifically that as a matter of fact the husband owned it. Judgment was entered accordingly. The vendees properly contend that that judgment cannot be collaterally attacked. As against the vendees the judgment stands.

The second question is whether the parties, or either of them, can redeem. The supplemental complaint set forth that, pursuant to chapter 326, p. 733, Laws 1895, the parties, for the purpose of extending the time and saving the right of redemption set forth in the original complaint, had deposited $1,800 with the proper sheriff, and executed a bond in the sum of $200, with sureties, which had been approved by the sheriff, conditioned to pay subsequently accruing interest. No question as to these facts or as to the sufficiency of the amounts is raised by the assignments of error. The defendants insist that, to entitle the plaintiffs or either of them to redeem, under section 5474, Gen. St. 1894 (see section 4312, R. L. 1905), that section required the person to redeem, to produce to the sheriff or clerk the amount of money required and the deed of conveyance under which he claims the right to redeem. An examination of the two sections has satisfied us that, if the plaintiffs complied with chapter 326 of the Laws of 1895, it was not necessary for them also to produce to the sheriff their deed; that is to say, they need not have complied with the terms of the Laws of 1895 and also of section 5474. Whether this would be true since the enactment of the Revised Laws of 1905 is not before us under the law applicable to these facts. It is evident that it was for the court to determine whether or not the plaintiffs were entitled to redemption in the litigation in which the Laws of 1895 were admitted to have been complied with. It would have been a useless superfluity to have produced to the clerk or sheriff evidence of the right to redeem. The Laws of 1895 having been complied with, the defendants' contention that redemption could not have been effected is denied.

In the view here taken the right to redeem is that of the husband only. That right extends to the whole estate. The judgment determined that the wife had no interest in the property, but that it was the property of the husband. She has received the amount awarded to her by the court, and has no interest in the premises, so long as the judg-

ment has not been changed by any direct application to that effect. The vendees took nothing by the quitclaim deed, because, in view of the judgment, the wife had no interest in the land, except under the judgment, and because the vendees had actual knowledge of the judgment. Their act in obtaining a quitclaim deed was a justifiable precautionary measure, with a view to fortifying the certificate and to eliminating the possibility of any future claim by the wife, based upon the fact that the title had stood in the name of the husband and wife before the judgment in the divorce proceedings. It follows that the defendants are not entitled to judgment. We have doubt whether the present findings of fact and conclusions of law are such that this court can advantageously or properly direct what judgment should be entered. The matter is accordingly referred to the trial court for action in accordance herewith.

The order appealed from is reversed, and the case is remanded for further proceedings in accordance herewith.