JOHN S. DZURIS *vs.* EVERETT A. PIERCE & another, trustees, & another.

Hampden.   October 20, 1913. — November 25, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Equity Jurisdiction,* Rescission of exchange because of misunderstanding of parties as to identity of property.   *Contract,* What constitutes.   *Negligence. Sale,* Rescission.   *Equity Pleading and Practice,* Master's report.   *Agency.*

In a suit in equity to set aside an exchange of land by the plaintiff and the defendant on the ground that the land which the defendant conveyed to the plaintiff was not the land that the plaintiff had thought it was, a master, after making findings of specific facts as to the transaction and a finding that the plaintiff was mistaken as to what land he was buying, stated that it was "a fair question whether this mistake was not due to the fact that the plaintiff did not exercise reasonable caution in examining the property." *Held,* that this statement of the master was neutral, and left the question, whether the plaintiff was negligent, to be determined from the other facts reported by the master.

A suit in equity may be maintained to rescind an exchange of real estate on the ground that there was no meeting of the minds of the parties as to the identity of the property which the plaintiff was to receive from the defendant, although there was no fraud or duress exercised by the defendant, if the misunderstanding did not arise by reason of voluntary negligence of the plaintiff or of a failure on his part to obtain reasonably accessible knowledge.

In a suit in equity to rescind an exchange of a farm of the plaintiff for a city block of the defendant on the ground that there was no meeting of the minds of the parties as to the identity of the city block, it appeared that the plaintiff was of foreign birth, unable to write anything in English excepting his name or to read English to any extent, that he had employed in the transaction with the defendant agents who, without his knowledge, also were employed by the defendant, that the agents were unduly solicitous to bring about the exchange, and that two material but unintentional misstatements of fact were made by them to the plaintiff, one of which led him to think that a neighboring and much superior block was the one which he was to receive; that he had an opportunity to rectify his misunderstanding by personal investigation before the exchange was consummated, but that he relied for guidance wholly upon the agents. *Held,* that the mistake of the plaintiff as to the identity of the block which he was to receive did not arise from negligence on his part, and that he was entitled to have the exchange rescinded.

In a suit in equity for the rescission of an exchange of a farm for a city block, upon which there was a first mortgage, on the ground that, without fault or negligence of the plaintiff and because of unintentional misrepresentations and over-solicitude of agents who the plaintiff thought were employed by him alone, but who also were employed by the defendant, the minds of the parties never met as to

the identity of the block, relief will not be refused to the plaintiff merely be-
cause, as a part of the transaction, he delivered to the defendant a second mort-
gage upon the block which the defendant assigned to a third party, who pur-
chased it without notice of the facts upon which the plaintiff seeks rescission.

BILL IN EQUITY, filed in the Superior Court on May 5, 1913, against Everett A. Pierce and Edward J. Pinney, trustees of the Pierce-Pinney Realty Trust, and Charles C. Abbey.

The plaintiff alleged in substance that he was induced to exchange a farm in Westfield for certain apartment house property of the defendant trustees in Springfield subject to a mortgage for $30,000 held by the Spencer Savings Bank, he also giving to the defendant trustees a second mortgage for $15,000 on the property which he received from them; that he was induced to make the exchange by certain false representations by the defendant trustees and their agents, and that the defendant trustees, in violation of an agreement with him, had assigned the second mortgage to the defendant Abbey for $12,000. The prayers of the bill, besides prayers for injunctions *pendente lite*, were that the exchange be declared invalid and that the farm in Westfield be reconveyed to the plaintiff.

The case was referred to Nathan P. Avery, Esquire, as master. The substance of his findings is stated in the opinion.

A final decree dismissing the bill without costs was made by order of *Morton*, J. The plaintiff appealed.

The case was submitted on briefs.

*R. J. Morrissey & J. L. Gray*, for the plaintiff.

*H. W. Ely & J. B. Ely*, for the defendants.

RUGG, C. J. The plaintiff seeks to set aside an exchange of real estate between himself and the defendants. The case was sent to a master. No objections or exceptions to his report were filed and it has been confirmed. The material facts therein narrated must be taken as true because no evidence is reported. The plaintiff, an Hungarian by birth, being unable to write anything in English except his own name and unable to read English to any extent, owned a farm which he placed in the hands of three agents, Fenton, Brown and Berman, to sell. These same agents earlier had been employed by the defendants to make sale of an apartment house of sixteen tenements. There is no finding that the plaintiff knew of this double employment. A few days later

Fenton sent to the plaintiff a letter in which he gave correctly the street numbers of the defendants' house, and described it as having "marble entrance and stairs," and further said, "income per year $6,480." The building did not have a marble entrance and stairs and the income named was based on the theory that all the apartments were rented. In fact, four out of the sixteen apartments were vacant at the time of the transactions here in question. The statement as to the marble stairs was made by mistake and was in no wise authorized by the defendants. But this is an immaterial circumstance, for if such misstatement is of consequence the principal is bound by it. *Weeks* v. *Currier*, 172 Mass. 53, 55. *Haskell* v. *Starbird*, 152 Mass. 117. The agent Brown took the plaintiff and his wife to the defendants' property in an automobile, but none of the party alighted, and they stopped only a moment in the street to examine it. Adjoining the defendants' block was one built from the same plans and of the same size, having marble stairs and cement pillars and apparently more valuable. Although the agent Brown pointed out to the plaintiff the block actually owned by the defendants, the plaintiff thought that the block with the pillars and marble stairs was pointed out and he continued to understand, until after the deeds were passed, that that was the block which he was buying rather than the one actually owned by the defendants. The plaintiff did not again visit or make any examination of the defendants' block. He relied upon the statements contained in the Fenton letter and other representations made to him. This letter contained the only misrepresentation made to the plaintiff by the defendants or the agents. But the master finds "that the plaintiff with his limited education and experience, and his poor knowledge of English, was somewhat confused in dealing with so many agents and parties, and I find and believe that through the solicitation of Mr. Berman he was over-persuaded to enter into a transaction which for him was somewhat hazardous and unwise. . . . In regard to Mr. Berman I do not find that any misstatements were made by him, but considering the people with whom he was dealing, his methods of solicitation are open to criticism." Although finding that the plaintiff was mistaken as to the block he was buying, the master also states that "it is a fair question whether this mistake was not due to the fact that the plaintiff did not exercise

reasonable caution in examining the property he purchased before he made his agreement to purchase." This is a neutral expression and leaves the existence of negligence to be determined from the other facts.

It is an elementary principle of the law of contracts that, if one party thinks he is buying one thing and the other party thinks he is selling another thing, there is no meeting of minds on the subject matter of the sale. When there is no agreement as to the identity of the subject matter of the contract there can be no contract. *Kyle* v. *Kavanagh,* 103 Mass. 356. *Bridgewater Iron Co.* v. *Enterprise Ins. Co.* 134 Mass. 433. Where a conveyance has been based upon such a misunderstanding, even though it may be innocent on both sides, equity in proper cases will grant relief. *Spurr* v. *Benedict,* 99 Mass. 463. *Long* v. *Athol,* 196 Mass. 497, 504. This branch of equitable relief is distinct from the reformation of contracts entered into by mistake, which must be mutual by all parties before relief can be granted. "Mutual mistake" in that connection means a mistake common to all the parties to the contract. *Page* v. *Higgins,* 150 Mass. 27, 31. *Loud* v. *Barnes,* 154 Mass. 344. Further, such a misunderstanding between the parties touching the identity of the subject matter of the contract, in order to be ground for relief in equity must not have arisen from the voluntary negligence or failure to obtain reasonably accessible knowledge on the part of the complaining party in the absence of fraud or duress. *Clark* v. *Boston,* 179 Mass. 409. *Grymes* v. *Sanders,* 93 U. S. 55, 61. *Upton* v. *Tribilcock,* 91 U. S. 45.

If the parties to the transaction stood at arms' length as to each other, probably the plaintiff could not prevail. *Boyden* v. *Hill,* 198 Mass. 477, 483. *Mabardy* v. *McHugh,* 202 Mass. 148, 151. But the relations of the parties are complicated by the circumstance that the agents, Fenton, Brown and Berman, whom the plaintiff employed to act for him, were at the same time acting as agents for the defendants in disposing of their estate, and so far as appears without the knowledge of the plaintiff, and that the plaintiff was over-persuaded by the solicitations of Berman, whose conduct was "open to criticism." The principles of the law of agency under conditions like the present are well settled. An agent is bound to exercise the utmost good faith toward his principal in all dealings within the scope of his agency. He stands in

this respect in a fiduciary relation; and is bound to the observance of the fine obligations which inhere in that relation. As has been said repeatedly, this is not "a technical or arbitrary rule. It is a rule founded upon the highest and truest principles of morality." Lord Cairns in *Parker* v. *McKenna,* L. R. 10 Ch. 96, 118. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 375, 376. It has been applied to a great variety of incidents where the agent has failed to live up to the legal standard required of him. One of the most important and common illustrations of the rule is that the agent cannot assume any relation which is inconsistent with the free, earnest and honest advancement of the interests of his principal. He cannot without the knowledge and assent of his principal attempt to act in the interest either of himself or the other party to a bargain, which he is undertaking to promote ostensibly for the benefit of his principal. He cannot take a commission from both sides. *Walker* v. *Osgood,* 98 Mass. 348. *Alvord* v. *Cook,* 174 Mass. 120. *Quinn* v. *Burton,* 195 Mass. 277. *Maxwell* v. *Massachusetts Title Ins. Co.* 206 Mass. 197, 202. *Little* v. *Phipps,* 208 Mass. 331.

The consent of the plaintiff to the exchange of estates, which he now seeks to have set aside, was procured through the oversolicitation and representations of those whom he had every reason to believe had eyes single to his own interests, whereas in truth they were serving the other party to the contract. The arguments urging him to the exchange of property, which he rightly might assume to have been disinterested, may have been actuated purely by antagonistic considerations. The zeal which he properly might think was manifested for his benefit might have sprung from quite different motives, having their roots in an undisclosed but adverse employment. Where inconsistent duties have been assumed by the agent, the law does not inquire into the facts of his conduct, but it refuses to sanction a relation subject to such temptations to wrongdoing. Grouping together the circumstances that there was a misrepresentation as to the marble stairs, a statement as to the income from the defendants' property susceptible of the interpretation that it meant income actually accruing from occupied tenements although in truth a fourth part of the number were unoccupied, coupled with the further fact that those upon whom he had by contract a right to rely for advice solely for his benefit

were the paid agents of the defendants, the mistake of the plaintiff as to the identity of the property, which he supposed he was getting in exchange, cannot be said to have arisen on the facts disclosed in the master's report from his own negligence or failure to exercise reasonable care touching a transaction of this importance. It follows that in view of these unusual features the exchange may be set aside on the ground of a failure of the minds of the parties to be in agreement as to the identity of the parcel of real estate owned by the defendants.

The defendants' contention is not sound that there can be no rescission because the parties cannot be placed *in statu quo.* The only change in the condition of the parties or of the two estates since the exchange of deeds is that a mortgage executed by the plaintiff upon the property, described in the deed from the defendants to him, to the defendants Pierce and Pinney, has been assigned by them to the defendant Abbey. Although the consideration for this assignment was $3,000 less than its face, it has been found that Abbey is a holder in good faith. Therefore the bill must be dismissed as to him. But this does not affect the equitable rights of the other parties. The defendants have acquired through the over-activity of their agents the property of the plaintiff, who is able to tender back to them their property given in exchange unchanged as to title or condition. Their transfer of the mortgage, given by the plaintiff as part consideration for the exchange, is of no more consequence upon the present issue than their subsequent use of a cash consideration would have been, if the price had been paid in cash.

*Decree affirmed so far as it dismisses bill as to Abbey, and reversed as to the other defendants.*