## BROWN v. BRADLEY.  (No. 45.)

(Court of Civil Appeals of Texas. Waco.
Feb. 14, 1924. Rehearing Denied
March 20, 1924.)

**1. Equity ⟨⟩66—Person must offer to do equity before he can ask it.**

Before a person can ask equity, he must offer to do equity.

**2. Contracts ⟨⟩93(1)—Rule stated as to effect of mistake in invalidating assent.**

Generally, where parties assume to contract, and there is a mistake with reference to any material part of the subject-matter, there is no contract because of the want of mutual assent necessary to create one.

**3. Deeds ⟨⟩69—Unilateral mistake held ground for canceling deed.**

Where, through mistake not the result of the failure to exercise ordinary care, vendor executed a warranty deed which described, instead of the land he intended to convey, land he did not own, and did not intend to sell and convey, and he did not intend to convey more land than he owned, *held*, that he was entitled to have the deed canceled on placing the purchaser in statu quo, the latter not claiming to have been injured, except that he had lost what he thought was a bargain.

Appeal from District Court, Limestone County; J. R. Bell, Judge.

Action by C. S. Bradley against L. L. Brown. From an adverse judgment, defendant appeals. Affirmed.

Ira Lawley, Kennedy & Lyell, and L. W. Shepperd, all of Groesbeck, for appellant.

W. T. Jackson, and C. S. & J. E. Bradley, all of Groesbeck, for appellee.

BARCUS, J. August 2, 1921, appellee and wife executed a general warranty deed to appellant to a tract of land in Groesbeck 210 feet wide and 625 feet long, for the consideration of $250 cash and a note for $1,000, due October 1, 1922, bearing 10 per cent. interest. The tract of land that appellee owned, and which he thought he was selling, was 150 feet wide and 580 feet long, known as the "oil mill lot." The erroneous description of the property was placed in the deed by reason of the fact that appellee wrote the deed

and instructed his stenographer to fill in the field notes from a deed executed by W. P. Brown to the oil company. There were two of said deeds of record, and the stenographer copied the one that contained erroneous field notes. Appellee executed the deed without reading the field notes. The sale by appellee and purchase by appellant of the lot was negotiated entirely through a real estate agent, the agent approaching appellee with the statement that he had a purchaser for the oil mill lot, and after several conferences appellee agreed to sell the lot for $250 cash and the $1,000 note. The deed was executed as herein stated and delivered to the real estate agent, who carried it to appellee. Appellee read the deed, compared the field notes, and saw that he was getting the 210x625 feet; then executed the note and paid the cash to the real estate agent, who delivered same to appellee.

Appellant refused to pay the $1,000 note, and this suit was instituted to recover thereon. Appellant answered, alleging that title to all the land had failed except to the 150 feet front by 580 feet deep, and that said lot was worth only half the amount of the total he had purchased, and asked that he be allowed a credit of $625 on said $1,000 note. The appellee filed a supplemental petition, alleging the mistake in the description of the land, and offered to permit appellant to take the lot which he owned for the $1,256, and, if the appellant did not want the land at said price, appellee asked that the contract be rescinded and the deed canceled. Appellee tendered into court $296, being the $250 paid by appellant, together with 10 per cent. interest thereon for the time he had used same, and the $1,000 note to be canceled.

In answer to special issues the jury found that appellee exercised the degree of care that a man of ordinary prudence would have exercised under like or similar circumstances to ascertain what land was described in the deed, and that it would be unfair, unjust, and unconscionable for the court to enforce the deed as written and permit defendant to hold the lot upon the payment of one-half of the agreed purchase price. It was admitted that the land embraced in the field notes outside of the true bounds of the oil mill lot was equal to the value of the land embraced in the oil mill lot proper. Based upon the findings of the jury and additional findings by the court, judgment was entered canceling the deed and the note, and awarding to appellant the $296 paid into court by appellee.

The controlling question in this case is as to the right of appellee to rescind the contract and have said deed canceled. Appellant did not allege and does not claim any change in the value of the property or the conditions surrounding same since he purchased. There are no innocent parties involved. There was no mistake and no fraud. The determination of the question of appellee's right to rescind is entirely equitable in its nature. The jury found that appellee used the degree of care that an ordinarily prudent man would under similar circumstances to ascertain the description of the land that he intended to convey. Appellee's deed embraced part of the right of way of the railroad and part of the public street, which he never owned.

[1] Under our procedure, questions of law and equity are blended, and before a person can ask equity he must offer to do equity. To permit appellant to retain title to a lot which appellee thought he was conveying for one-half the value appellee placed thereon, penalize appellee for having unintentionally and through an honest mistake embraced in the description of the property land which did not belong to him, and permit appellant to reap a benefit from appellee's acts, would not conform to the principle of equity. The axiom, "By the natural law it is not right that any one should grow rich by the detriment and injury of another," is applicable to this case; and the axiom that "A court of equity is a poor place for a person to go to reap where he has not sown" is here appropriate. Appellee offered to permit the appellant to keep the lot on the terms that he (appellee) thought he was selling, and in the alternative tendered to appellant the note and the full cash consideration which he had paid, with 10 per cent. interest thereon for the time he had held the money, and to cancel the deed, and thereby place each party in statu quo. Appellant refused to do either. Appellee is not seeking to reform a contract; he is attempting to cancel a contract which he claimed was in fact never made; appellee's contention being that he did not intend to and did not sell all of the property described in his deed; that he did not own it and would not have attempted to convey something that he did not own, and if appellant thought he was buying all of the property described in the deed and was making his offer for all of the property then their minds never met, and no contract was ever made, and that the deed should in equity be canceled and the parties restored to their original positions.

In the old chancery case, Calverley v. Williams, 1 Ves. Jr. 210, Lord Thurlow said:

"No doubt, if one party thought he had purchased bona fide, and the other party thought he had not sold, that is a ground to set aside the contract, that neither party may be damaged, as it is impossible to say one shall be forced to give that price for part only which he intended to give for the whole, or that the other shall be obliged to sell the whole for what he intended to be the price of part only."

The same principle was enunciated by Justice Brewer of the United States Supreme Court in Williams v. United States, 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026, in this language:

"If, through inadvertence and mistake, a wrong description is placed in a deed by an individual, and property not intended to be conveyed is conveyed, can there be any doubt of the jurisdiction of a court of equity to interfere and restore to the party the title which he never intended to convey? So of any other inadvertence and mistake, vital in its nature, by which a title is conveyed when it ought not to have been conveyed."

In the discussion of this subject it is stated in 6 R. C. L. 623, that a unilateral mistake may be a good defense when hardship amounting to injustice would be· inflicted on a party by holding him to his· apparent bargain where it is unreasonable to hold him to it. 9 C. J. 1167, states the rule that—

"Where a contract in writing is executed by only one of the parties under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel· the apparent contract as written, and to place the parties in statu quo. * * * A mistake on one side may be a ground for rescinding a contract or for refusing to enforce its specific performance."

[2] It is a general rule· that, where parties assumed to contract, and there is a mistake with reference to any material part of the subject-matter, there is no contract because of the want of mutual assent necessary to create one. Frazer v. State Bank, 101 Ark. 135, 141 S. W. 941; 27 R. C. L..353; Werner v. Rawson, 89 Ga. 619, 15 S. E. 813; Murray v. Sanderson, 62 Wash. 477, 114 Pac. 424; Thompson v. Dupont Co., 100 Minn. 367, 111 N. W. 302; Dzuris v. Pierce, 216 Mass. 132, 103 N. E. 296; Crosby v. Andrews, 61 Fla. 554, 55 South. 57, Ann. Cas. 1913A, 420; Conlan v. Sullivan, 110 Cal. 624, 42 Pac. 1081; Bank v. McLane, 96 Tex. 48, 70 S. W. 201; Bivins v. Kerr, 268 Ill. 164, 108 N. E. 996; Benson v. Markoe, 37 Minn. 30, 33 N. W. 38, 5 Am. St. Rep. 816; Coleman v. Illinois Life Ins. Co. (Ky.) 82 S. W. 616; 24 Am. & Eng. Enc. of Law (2d Ed.) 618.

[3] It being an undisputed fact in this case that appellee did not own the land described in the deed which he executed to appellant, and did not intend to sell or convey same, and that in the trade he was making with appellant he did not in any way intend to convey more land than he owned, it would be indeed a strange rule of equity to say that because he had by inadvertence and mistake executed the deed he would be liable on his warranty, when the purchaser had not been in any way injured. The only effect of forcing appellee to pay for the land which he did not own would be to enrich appellant by taking from appellee that which belonged to him and giving same to appellant. The judgment of the trial court placed the parties in statu quo. Appellant has all of his money with 10 per cent. interest thereon, and does not claim to have been in any way injured by having the deed canceled and the contract rescinded, except that he has lost what he thought was a bargain. To enforce the contract that appellee did not intend to make and could not have made on account of not having owned the property would be contrary to good conscience and equity.

We have examined all of appellant's assignments of error, and do not think they show reversible error; and, believing that a righteous judgment was rendered by the trial court, this cause is affirmed.