## HOLLOWAY v. WHEELER.   (No. 60.)*

(Court of Civil Appeals of Texas. Waco. April 3, 1924.)

**1. Alteration of instruments &#9758;11(2)—Alteration made by third party held not to invalidate.**

Where real estate agent wrote into a contract of exchange of property between parties that defendant was to pay agent $75 commission, which was in accordance with defendant's agreement with agent, of which insertion and agreement plaintiff had no knowledge, such alteration did not render the contract unenforceable against defendant.

**2. Alteration of instruments &#9758;11(2)—Material alteration made by third party will not vitiate contract.**

A material phrase, inserted in a contract after it was signed, would not vitiate the contract, unless it was done by the party suing on it or ratified by him after it was made by some other person.

**3. Alteration of instruments &#9758;13—When suit on contract constitutes ratification of alteration therein.**

As to a material alteration inserted in a contract after defendant executed it, and without his consent, plaintiff by suing on the contract, basing his rights under it with the alteration therein, thereby ratified and adopted the alteration.

**4. Alteration of instruments &#9758;30—Whether phrase in contract was inserted, and, if so, whether it was material, held for jury; "overhauling."**

Where the testimony was conflicting as to a contract of exchange of property, providing that the automobile (which was a part of the property to be exchanged) was to be painted and overhauled by defendant and put in good running order, whether the phrase "put in good running order" was added after the contract was executed and without defendant's consent, and, if so, whether such phrase constituted a material alteration, held for jury; "overhauling" meaning to examine thoroughly with a view to repairs.

**5. Exchange of property &#9758;6—That original plat of land to be conveyed had dedicated alleyway held not valid objection to title; alley never having been accepted by public.**

Defendant's objection, to title offered by plaintiff, that the land as originally platted had an alleyway across a part of it which had been dedicated by the plat to the public, held not valid objection, where the alley was never opened and never accepted or used by public, and all the deeds made to the addition did not refer to the alley.

**6. Vendor and purchaser &#9758;143—When purchaser waives defects or objections to title stated.**

A purchaser of land who fails to make his objections to title in writing, when required by contract to do so, waives any defects or objections.

**7. Contracts &#9758;15 — Minds of parties must meet as to all essential terms.**

It is essential that both parties to a contract must assent to the same thing in the same sense at the same time, and their minds must meet as to all of the essential terms.

**8. Exchange of property &#9758;3(1) — Contract could be rescinded if minds of parties never met as to identity of property.**

Contract for exchange of property could be rescinded by defendant if defendant was honestly mistaken as to property which he thought he was purchasing from plaintiff, where no harm was done, no advantage taken, and no equities had arisen.

**9. Contracts &#9758;93(1)—Mistake of one party as to essential fact ground for rescission.**

A contract entered into through mistake of one party as to one of the essential facts may be rescinded because the minds of the parties did not meet.

**10. Vendor and purchaser &#9758;31—When conveyance of tract different from tract intended to be purchased may be rescinded.**

A person who thinks he is buying a certain tract of land may rescind a conveyance which conveys a different tract, on theory no contract was in fact made; the minds of the parties not having met.

Error from District Court, McLennan County; J. P. Alexander, Judge.

Suit by O. T. Wheeler against L. E. Holloway. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Johnston & Hughes, of Waco, for plaintiff in error.

Witt, Terrell & Witt, of Waco, for defendant in error.

BARCUS, J. On November 14, 1921, O. T. Wheeler, defendant in error, hereinafter

---

called plaintiff, and L. E. Holloway, plaintiff in error, hereinafter called defendant, executed a contract, whereby it was agreed in substance that they would make a mutual exchange of property. Under said contract Wheeler was to convey to Holloway 150x105 feet at the corner of North Nineteenth street and West avenue in Waco, and Holloway was to convey to Wheeler two tracts of land described in the contract and one Ford car. The contract provided each party was to furnish a complete abstract, showing good title in the seller. The contract further provided that the Ford car was to be put in good running order by Holloway, and that Holloway was to pay to Mitchell, the real estate agent, $75 commission.

The plaintiff in his suit alleged that he was ready, able, and willing to comply with his part of the contract and had tendered performance, and that the defendant had refused to comply with his part, and by reason thereof he had been damaged in the sum of $1,500, the alleged difference in the value of the properties he was under the terms of the contract to convey to the defendant and the value of the properties defendant was to convey to plaintiff.

The defendant answered by general demurrer, some special exceptions, general denial, and as a special defense alleged that plaintiff could not convey and did not furnish abstract showing a good title to the land described in the contract; and, further, that there was no meeting of the minds of plaintiff and defendant as to the property to be conveyed, in that he was misled as to the identity of the property which plaintiff owned at Nineteenth and West; that the property pointed out to him and which he looked at and thought belonged to the plaintiff at the time he signed the contract was so located that it embraced the property directly facing what is known as Ethel avenue, when as a matter of fact the property that was owned by plaintiff did not include said property, but was at a different point; that the following day after it was signed, he discovered the mistake, and at once notified the plaintiff thereof, and told him that he would not carry out the contract; that the plaintiff agreed to release him; and that the contract was mutually abandoned. Defendant further alleged that the contract had been materially altered after he signed same, in that the words "Holloway to pay Mitchell $75.00 commission," and the words with reference to the car, "and put in good running order," had been inserted therein without his knowledge or consent. The cause was submitted to a jury, and in answer to the findings of the jury and the additional findings of the court judgment was entered for the plaintiff for $290, from which this appeal is perfected.

[1] The defendant contends that, by reason of the alterations made in the contract after he signed same, the contract became void and unenforceable as against him. The contract was for an exchange of properties between plaintiff and defendant. The alterations which the defendant claimed were made were that there had been written into the contract a statement that he was to pay Mitchell, the real estate agent, $75 as commission, and that he was to put the Ford car which he was selling under the contract in good running order. If the instrument was materially altered in so far as same affected plaintiff and defendant after same was signed, then same would not be binding on defendant, provided the alterations were made by the plaintiff. Baldwin v. Bank, 104 Tex. 122, 133 S. W. 864, 134 S. W. 1178; Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56. The question arises, therefore, as to whether the alterations complained of were material, and as to who, if any one, made the changes. Mitchell, the real estate agent, testified that he wrote into the contract after it was signed the statement that Holloway was to pay him $75 commission; and Holloway testified that that was his agreement with Mitchell. There was no evidence that the plaintiff knew of such agreement or knew of said statement being written in the contract. It did not in any way affect the contract as between plaintiff and defendant, and as between them was not a material alteration.

With reference to the other claimed alteration the contract provides: "The Ford sedan to be painted and overhauled by Holloway and put in good running order." The defendant claims that the words "and put in good running order" were inserted in the contract after he had signed the same and without his knowledge or consent. The plaintiff and Mitchell testified that the phrase was in the contract when same was signed by all the parties. The defendant testified that it was not in the contract when he signed it. It is therefore a question of fact to be determined by the jury as to whether said phrase was in the contract at the time same was executed.

[2-4] If the phrase was written in the contract after it was signed, it would not vitiate same, unless it was done by the plaintiff or ratified by him after it was made by some other person. 2 C. J. pp. 1227 to 1236. In this case the plaintiff has sued on the contract with said phrase contained therein, and is insisting on his rights under the contract as sued on. He has thereby ratified and adopted the alteration if the same was in fact made. It is the duty of the trial court to construe written instruments, if they are plain and unambiguous. It therefore becomes pertinent to ascertain whether the words "overhauled" and "put in good running order" mean the same. "Overhaul" means to examine thoroughly with a view to repairs. We have not been able to find any clear definition of "good running order." If

the expressions are trade words used by automobile mechanics, they come under that class of words or phrases that should be interpreted in the light of what was intended by the parties using them and to ascertain said intention the court could hear testimony. If the expressions "overhauled" and "put in good running order" to the auto mechanic mean one and the same thing, then it would not be a material alteration. If, on the other hand, they mean separate and distinct matters, it would be material. The trial court should have submitted to the jury the questions as to whether the phrase "put in good running order" was added in the contract after same had been signed by the defendant and without his knowledge or approval, and, if so, whether same was a material alteration of the contract. If the alteration was so made after the contract was signed, and was material, the plaintiff would not be entitled to recover on the contract.

[5, 6] The defendant contends that plaintiff was not entitled to recover by reason of his inability to furnish title to the property described in the contract. The only defect defendant claimed existed was that the land as originally platted had an alleyway across the rear end, 20 feet wide, which had been dedicated by said plat to the public. The testimony shows the plat as originally filed in January, 1891, did contain a 20-foot alley. The jury found that said alley was never opened and never accepted or used by the public. All the deeds that have been made to said addition were without reference to said alley. We do not think the objection to title was good. If we are mistaken in this, the defendant did not at any time point out any defects in the title to the land prior to the time the suit was filed or prior to the time he refused to further carry out his part of the contract. Where a purchaser of real estate is required under the contract of purchase to make his objections, if any, to the title in writing, and he fails so to do, he thereby waives any defects or objections. Stroburg v. Walsh (Tex. Civ. App.) 203 S. W. 391; Lieber v. Nicholson (Tex. Com. App.) 206 S. W. 512; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979.

Appellant contends that there was a mutual abandonment of the contract, and that at least there was sufficient evidence to require such issue to be submitted to the jury. There was no testimony of any probative force which raised this issue, and there was no error on the part of the court in refusing to submit same to the jury.

[7] Defendant contends that the court erred in refusing to submit to the jury the issue as to whether or not the minds of the plaintiff and defendant met on the quantity and identity of the property owned by plaintiff at the corner of Nineteenth and West avenue before and at the time the contract was signed; and in failing to submit the issue as to whether the defendant at the time he executed the contract with plaintiff believed the property at Nineteenth and West avenue owned by plaintiff fronted across Ethel avenue; said issues having been requested by the defendant and refused by the court; defendant's theory being that he was either misinformed as to the location of the property of plaintiff or was honestly mistaken in the property plaintiff did own, and that he would not have made the contract to exchange his property for plaintiff's but for the fact that he believed at the time that plaintiff's property fronted Ethel avenue. Plaintiff's property at Nineteenth and West avenue as a matter of fact was 150 feet frontage on Nineteenth street and 105 feet deep on West avenue. Ethel avenue extended would run directly into the lot adjoining plaintiff's property, and, if plaintiff's property fronted Ethel avenue, it would have been 200 feet frontage instead of 150 feet frontage on Nineteenth street. Ethel avenue did not extend further than the subdivision of the city out of which the property in controversy is involved. The entire 200 feet frontage on Nineteenth street was in one inclosure, and Mitchell, the party who carried the defendant out and showed him plaintiff's land, according to defendant's testimony, told the defendant that plaintiff's property extended on Nineteenth street far enough to take in the lot directly in front of Ethel avenue. The defendant testified that, when he first saw the property in company with Mitchell, he went onto the tract and stated he would build his home on the property so that he could get a view directly out Ethel avenue. The day after the contract was signed defendant, in company with his wife, went to the property with a view of locating the exact place to build a home, and while there learned from some outsider that the plaintiff's property did not embrace the property fronting on Ethel avenue. Defendant at once notified plaintiff of his mistake in the location of the property, and stated to the plaintiff that he would not carry out the trade because it was not the property he thought he was buying. The evidence with reference to whether the defendant in good faith believed at the time he signed the contract that the property extended across Ethel avenue is conflicting. The issue should have been submitted to the jury for its determination.

If the defendant at the time he signed the contract with plaintiff in good faith believed the property which plaintiff owned and was trading to him fronted Ethel avenue, and defendant was purchasing same by reason thereof, then the minds of the parties never met on either the quantity or identity of the property involved. One of the essential elements of a binding contract is that both parties must assent to the same thing in the same sense at the same time, and their minds must meet as to all of the essential terms of

the contract. 13 C. J. p. 263. If the defendant believed he was purchasing the property facing Ethel avenue, then he and the plaintiff were not agreed on the property that plaintiff was to convey to him, since it is an admitted fact that plaintiff's property did not include that directly in front of Ethel avenue, and there was, if said condition existed, no meeting of the minds of the parties, and, unless there was such a meeting of the minds, then no contract in fact existed. Harris Millinery Co. v. Bryan, 59 Tex. Civ. App. 477, 125 S. W. 999; O'Neal v. Knippa (Tex. Sup.) 19 S. W. 1020; G. C. & S. F. Ry. Co. v. Dawson (Tex. Civ. App.) 24 S. W. 566; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311.

[8-10] Plaintiff contends that, if there was a mistake on the part of the defendant, it was a unilateral mistake, and that it was caused by the defendant's own negligence. Plaintiff did not make any false representations to the defendant as to the location or size of his property; he did not show the defendant his property; the defendant went with Mitchell, the real estate agent, to look at the property. There are no elements of fraud in the transaction. The statements made by Mitchell and the pointing out by him of the property evidently was what he believed in good faith to be the lines of the property belonging to plaintiff. At the time the contract was signed the plaintiff, under the testimony, had no information that would lead him to believe or cause him to suspect that the defendant thought or had any reason to believe that his property fronted on Ethel avenue. In the case of San Antonio Nat. Bank v. McLane, 96 Tex. 48, 70 S. W. 201, by the Supreme Court, it is stated:

"It cannot be said that one who has made a mistake in the conduct of his affairs, from which no injury has resulted to another, will be denied the aid of a court of equity to correct a mistake as to one who participated in it."

Where one party has entered into a contract through a mistake as to one of the essential facts, it will constitute a ground for a rescission, since the minds of the parties did not meet, and no contract in fact was made. Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. 457, 34 L. Ed. 1026; Dzuris v. Pierce, 216 Mass. 132, 103 N. E. 296; Brown v. Bradley, 259 S. W. 676, recently decided by this court, and not yet officially reported; Morgan v. Owens, 228 Ill. 598, 81 N. E. 1135; Kyle v. Kavanagh, 103 Mass. 356, 4 Am. Rep. 560; Thompson v. Dupont Co., 100 Minn. 367, 111 N. W. 302; Murray v. Sanderson, 62 Wash. 477, 114 Pac. 424.

In the case of Kyle v. Kavanagh, supra, the purchaser thought he was buying a house with a marble front, and after the contract was signed found that he had made a mistake. It was held that, when a purchaser thought he was negotiating for one tract of land, and the seller thought he was selling another, there was no meeting of minds, and therefore no contract.

The universal holdings of the courts, so far as we have been able to find, are in harmony with the proposition that, where a person thinks he is buying a certain tract of land, and the conveyance to him conveys an entirely different tract, same constitutes ground for rescission, because no contract was in fact made. In this case, if the defendant was honestly mistaken as to the property which he thought he was purchasing from the plaintiff, it could not be said that there was any meeting of the minds between plaintiff and defendant, because plaintiff was selling one tract and the defendant thought he was purchasing an entirely different one. No harm was done, no advantage taken, and no equities had arisen in the case. The defendant under his testimony acted promptly. If the jury should find that the defendant was mistaken as to the property which he thought he was buying, then the contract should not be enforced, and the court erred in refusing to submit the issue to the jury.

For the error indicated, the cause is reversed and remanded.