CATHERINE BOWEN *vs*. HORACE H. WOLFF.

PROVIDENCE—MAY 27, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Unconscionable Contracts. Equity. Reformation of Instruments.*

A., an elderly woman, unskilled in business matters, was the owner of a house and lot adjoining the respondent's lot. The latter was a physician who had attended A. professionally, and they were on very friendly relations as neighbors. The space between A.'s house on the rear and the respondent's line was eleven and a half feet; on the front a foot and a half less. The respondent was desirous of building an office at the rear of A.'s house, partly on his own and partly on A.'s land. A. declined to sell the land, but offered to lease it from year to year. The respondent declined this, and, after several conversations, resulting in no agreement as to the term of years, the respondent had a lease prepared by a lawyer of a strip extending from the street to the rear of A.'s lot, eleven and a half feet wide, for a term of five years, with a clause of renewal for a further term of fifteen years, at an annual rental of $12. The lease was brought to A. by the respondent and his attorney, read to her by the latter, and she signed it. The lease covered a foot and a half under the front of the house. It was not executed in duplicate, and no copy was given A. The office erected by the respondent was so close to A.'s house that the rear could not be repaired at all, while the entire side could not be repaired without the respondent's permission to enter upon the land. .

Upon a bill filed by A. to reform the lease :—

*Held*, that the contract was unconscionable, the result of importunity and impulsive action based upon confidence reposed in the respondent, who treated with A. on unequal terms, it being evident that she did not comprehend what she was doing.

*Held*, further, that the term of five years must be regarded as acquiesced in by A., and that the lease would be reformed by striking out the renewal clause and limiting the land leased to that covered by the respondent's building as it now stands.

STINESS, C. J.    The complainant is the owner of a house and lot on Prairie avenue, in Providence, adjoining the respondent's lot on the same street.    The respondent is a physician who has attended the complainant professionally, and they were also on very friendly relations as neighbors.    The complainant, an elderly single woman, living alone, is evidently unskilled in business matters, while the respondent is greatly her superior in this respect.

(1)    The space between the complainant's house at its southwest corner and the line of the respondent's lot is eleven and a half feet.    On the front side it is about one foot and six inches less.    The testimony shows that Doctor Wolff had desired for three or four years to build an office at the rear of her house, partly on his own and partly on the complainant's land.    He spoke to her about it frequently and asked her to sell him the strip of land, which she declined to do because a friend in California had advised her that it might interfere with the sale of her estate, but he advised leasing it from year to year.    The respondent then said that he could not do this, as he could not afford to put an office building there that would cost four or five hundred dollars, and perhaps after a year or two be obliged to remove it.    He says that she replied "You can take it for as long as you want it;" while she says that she told him that she "considered three years quite long enough."    This was in July, 1898.    Other conversations took place during the month, not affecting the terms of the lease, until August 5, 1898, when he went to her, saying that he was ready to go ahead and make the improvements to the office, and that he would like to have the terms of the lease definitely known, and asked her how much rent she wanted for it.    He testified that she said:    "Well, make it $8 or $9, just to give you a legal right to it.   'And she suggested that I draw up a little paper myself, and that she would sign it.    But I objected to that, saying that I would prefer

to have it drawn up by a lawyer in regular form.'" He then went to a lawyer and had a lease prepared of a strip extending from the street to the rear line of the lot, eleven and a half feet wide, for a term of five years, with a subsequent clause of renewal for a further term of fifteen years, at an annual rental of twelve dollars per year. The lease was brought to her on August 8th by the respondent and his attorney, read to her by the latter, and she signed it.

This bill is brought to cancel or reform the lease. Several facts are apparent upon the testimony of the defendant himself. No term of years was agreed upon before the preparation of the lease. The lease may run for twenty years, although no such time was previously mentioned, and this term was split into two parts—a term of five years with a privilege to renew for fifteen years more, which could easily escape the attention of a more experienced lessor. The complainant was evidently intending a friendly accommodation of the respondent, and relying upon him in the preparation of the lease, after having stated that three years was long enough. While he testifies that she said he could have it as long as he wanted it, she denies this ; and he did not tell her that the term was possibly for twenty years. Neither did he expressly describe the strip the lease was to cover, all the talk having been about an office building simply. The lease, in fact, covers eleven and a half feet from the front to the rear of the lot, and thus the line runs a foot and a half under the front part of the house. The words "for the purpose of an office" were in the lease, but erased. The lease was not executed in duplicate, and no copy was given to the complainant.

Upon these facts we think it is clear that the lease should not be allowed to stand in its present form.

While no actual fraud is charged, and while we have no doubt that the lease was fully read to her by the attorney before whom it was executed, it is evident that she did not comprehend what she was doing, and that advantage was taken by the respondent in this respect.

The lease was recorded on the next day after its execution, and when, shortly after, the respondent began to take down

the front fence, the complainant at once came out and objected to it.   Her conduct corroborates her testimony—that
she had no such understanding of the lease.   The respondent
admits that it was moved against her protest.

With the lease as it stands, the complainant cannot repair
one side of her house without the respondent's permission to
enter upon the leased land, and the office is built so close to
the house that the rear corner on that side cannot be repaired
at all.   She has still to pay taxes on the leased land, and her
house encroaches on it from the rear corner to a foot and five
and a half inches at the front corner.   No person, with
proper understanding, would have consented to such a lease.
We cannot think that the complainant would have signed
such a lease if she had comprehended it, or had taken independent advice.   She relied on the respondent's apparently
friendly relation to her, and for that reason had confidence
that he would not take advantage of her.   The lease was not
left with her to examine, but it was hurriedly executed, and,
after what had been said, she took no time for deliberation.
The rule in such cases is well stated in 24 Am. & Eng. Ency.
Law, 966 : " Courts of equity will not under all circumstances
relieve persons from hard bargains on the ground that they
have been taken by surprise.   But in many cases courts have
given relief from unconscionable contracts where one has
been suddenly and unexpectedly placed in a position in which
he could not properly exercise his own judgment, especially
if he acted under the persuasion of those upon whose judgment he relied, or if a false representation was made to him,
even though it were made in good faith, or if he was importunately pressed by the other party and acted without time
for deliberation and consultation with friends."

In this case we think that the contract was unconscionable,
the result of importunity and impulsive action, based upon
confidence reposed in the respondent, who treated with the
complainant on unequal terms.

In *Hoppin* v. *Tobey,* 9 R. I. 42, Jenkins had given to Tobey
certain real estate for past services as his attorney in fact.
In view of this confidential relation and the lack of indifferent

consultation, the court held that the deed should be set aside, although there was no suggestion of fraud or imposition nor of designed exercise of influence acquired by this relation to procure the deed.

*Brown* v. *Hall*, 14 R. I. 249, went further. In that case the complainant, an attorney at law, applied to the defendant, a broker, for a loan, to be secured by a mortgage on an undivided interest in realty worth about $10,000. The defendant loaned $2,000, with interest at the rate of five per cent. per month, the principal and installments of interest to run at the same rate until paid. The statute allowed parties to make their own agreement as to interest. On a bill to redeem, the court held the contract as made should not be enforced because of its unconscionable character and the fact that although the complainant read the note he did not comprehend its terms. The court also said that the complainant went to the respondent as a broker, and when the latter received the application he assumed a protective relation towards the complainant, and although they dealt directly, the respondent was bound, instead of overreaching him, to look out for him. It was his duty to give him full and true information and to be sure that he understood the contract.

Such a rule of duty applies with equal force to one acting as a friend, and with far greater force to a treaty with one who, not a member of the bar, as in that case, is a woman ignorant of legal forms and covenants, as well as of business transactions.

In *Baker* v. *Monk*, 4 DeG. J. & S. 388, the remarks of Lord Justice Knight Bruce are quite applicable to the case at bar. "The vendor was a single woman in humble life, of slender education, between sixty and seventy years of age, unprotected and unaided, and the purchaser a substantial tradesman. He placed the matter in the hands of his lawyer. The lawyer drew the instrument, with good intentions, but without consulting any other person, and brought it to the respondent for execution, and she executed it under his advice alone. The deed, in one respect at least, is not framed with sufficient attention to the interests of the vendor, although

probably with no wrong intention.   The transaction was thus begun and ended without any advice on her part.   The purchaser and vendor were in such relative positions as that, according to the known established doctrine of this court, it lies on the purchaser to show affirmatively that the price given is the value."

In *Brown* v. *Lamphear*, 35 Vt. 252, the rule is stated, quoting Chief Justice Redfield's edition of Story's Equity Jurisprudence, volume 1, section 138, *i*, that where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo*, equity will interfere, in its discretion, to prevent intolerable injustice.   See also Am. & Eng. Ency. Law, 2 ed. vol. 14, p. 20, and cases cited.

In this case we see no escape from the conclusion that the respondent took advantage of the generous and trustful spirit of the complainant.   When asked as a witness before the master whether he considered the lease a wise one for her to make, he declined to answer, under advice of counsel.   He certainly shows no advantage to her except the paltry rental which she mentioned, and which he regarded as too small and voluntarily increased.   He admits most serious disadvantages by filing stipulations that he does not claim any right under the lease to any portion of the land actually occupied by the walls of the complainant's house; that he does not intend to build upon the front portion of the land, which would completely block her windows on that side of her house; that he assents to her entering upon the land to make repairs on her house; and that he assents to a re-appraisal of the rent for the extended term of fifteen years.

The mere statement of these proposed concessions only makes more clear, if this were possible, the harsh and improvident character of the lease, as he himself procured it to be drawn.   Naturally there are exaggerations in the com-

plainant's statements of what she considers to be unfriendly and deceptive treatment by one in whom she trusted; but, basing our opinion almost wholly upon the respondent's own testimony, we find that there was this relation of confidence on her part; that she did agree to give him a lease, for at least three years, of the rear part of the lot, but not of the front part; that the term of five years, as read to her in the lease, must be regarded as having been acquiesced in by the complainant; that there was no mention whatever of a renewal clause, and that this, separated from the specified term of five years by long covenants as to payment of rent, surrender, etc., was not understood nor agreed to by her. So placed, it might easily fail to catch her attention, even if she had been familiar with such instruments. Indeed, since the rent was to be the same, the term might have been made twenty years, instead of adding a renewal clause, but for the fact that if the doctor should choose to remove he would not be hampered by the longer term, and if he did not he could retain it. Every advantage was put upon his side.

Under these findings we will direct a decree reforming the lease by striking out the renewal clause and limiting the land leased to that covered by the respondent's building as it now stands.

*Patrick J. McCarthy and George B. Barrows*, for complainant.

*Walter H. Barney*, for respondent.