DECISION
The plaintiffs, Randall Gee and Beverly Van Slyke, brought this action for injunctive relief to prohibit the defendant, Kathleen Bullock, from operating a limited liability company without their direct involvement and to reestablish joint operation of that company. By agreement of the parties, the nonjury trial of the action on the merits was consolidated with the hearing on the plaintiffs' application for an injunction.
Facts and Travel
In 1994, the defendant and her then partner, David Thow, operated a limited liability corporation known as "Thow Pasta" (Thow) located at 259 County Road, Barrington, Rhode Island. The business was faltering financially and in dire need of capital. David Thow was able to secure a substantial loan from his mother to assist in the operation of the business. Numerous disagreements arose between the two partners culminating in David Thow being locked-out of the retail shop's premises by the defendant.
The plaintiffs contend that some time on or about September 20, 1995, the defendant induced them to enter a business arrangement with her to form a limited liability company to be known as "The Pasta Shop" (Pasta). The defendant represented to the plaintiffs that it was her intent to form a second pasta retail business in order to infuse new capital into her preexisting retail business. It was agreed that the plaintiffs would put up certain monies desperately needed by the defendant to forestall her eviction from the business premises at 259 County Road due to nonpayment of rent. The defendant claimed to be the sole owner of Thow and represented to the plaintiffs that David Thow had relinquished any interest that he may have had, and that, therefore, she was able to act in her own name as the sole owner of the business. The defendant's attorney drafted a limited liability company petition which was then filed with the Rhode Island Secretary of State's Office on September 21, 1995 listing the plaintiffs and the defendant as members. While it is undisputed that there was no operating agreement between the parties at the time of the filing of this petition, the plaintiffs allege that the defendant agreed to sign an operating agreement that would provide them with a fifty-one per cent controlling interest in Pasta and an even profit sharing scheme. The plaintiffs indicated that the defendant was agreeable to this arrangement; however, the defendant denies making such a statement.
As a result of this purported agreement, the plaintiffs expended $11,747.34 as an initial investment in Bullock's businesses: $4,891.79 in back rent for the business premises at 259 County Road; $6,291.00 for various existing debts owed by Thow Pasta; and $564.55 for the purchase of a pasta die machine for The Pasta Shop. Additionally, the plaintiffs gave of their professional expertise in marketing, advertising, display, retail business management, and the setting up of an accounting system.
The facilitation of the operation ran from September 21, 1995, to the early part of October 1995 when at which time the parties began to have disagreements. On October 6, 1995 the defendant refused to sign the operating agreement Subsequently, the parties' business relationship remained in deadlock and then ended when the defendant locked the plaintiffs out of the business premises on October 10, 1995.
In late January 1996, Mary Donohue (Donohue), an associate of the defendant's with full knowledge of the nature and extent of the claims which the plaintiffs had against the defendant, invested in the business at the defendant's request. In late April 1996, coincident to the filing of the plaintiffs' action for injunctive relief, the defendant and Donahue formed and filed a corporation at 259 County Road under the name "Amore Pasta" (Amore) whereupon they transferred the assets of Pasta to Amore in exchange for equal Amore stock. This conveyance was made without the plaintiffs' knowledge or approval.
The plaintiffs filed this action for injunctive relief in late April 1996, alleging misrepresentation on the part of the defendant in obtaining monies from the plaintiffs to pay her back rent, buy supplies, and to make other expenditures on behalf of the creation of Pasta. The plaintiffs seek, inter alia, a mandatory injunction barring the defendant from operating Pasta and to allow them to carry on the business with the election of a new minority member. In a separate action, the defendant requests the Court to dissolve the limited liability company and provide a final accounting to all parties.
Misrepresentation or Fraud
Allegations of misrepresentation are one of the principal grounds for obtaining equitable jurisdiction in Superior Court.Bosworth v. Bosworth, 167 A. 151, 53 R.I. 389 (R.I. 1933). Furthermore, once equity recognizes a case, it will afford the parties before it complete relief including remedies at law.Scoppio v. Cannella, 120 A. 867, 45 R.I. 155 (R.I. 1923). Courts of equity have broad power and will not act so as to do an injustice, Bowen v. Wolff, 49 A. 395, 23 R.I. 56 (R.I. 1901), or permit unconscionable acts within its jurisdiction. Thus, since the plaintiffs plead and have proven that the defendant made material misrepresentations to them, this court's equitable powers have been properly invoked.
The plaintiffs contend that the defendant committed fraud. In Rhode Island, common law fraud has four elements: (1) a false or misleading statement of material fact that was (2) known by the defendant to be false and (3) made with intent to deceive, (4) upon which the plaintiff relies to its detriment. National CreditUnion Admin. Bd. v. Regine, 795 F. Supp. 59, 70 (D. R.I. 1992);B.S. Int'l v. Licht, 696 F. Supp. 813, 827 (D. R.I. 1988); andMcGovern v. Crossley, 477 A.2d 101, 103 (R.I. 1984).
From the evidence before it, this Court finds that the defendant did in fact deceive the plaintiffs during the course of their negotiations on September 21, 1995, and that as a result of the false statements and promises made by the defendant, the plaintiffs agreed to enter into a business relationship with the defendant and did indeed become partners of and substantial investors in Pasta.
The defendant made false representations to the plaintiffs when she claimed to have full ownership rights in the ongoing retail pasta business into which the plaintiffs were induced to invest and when she promised she would sign an operating agreement giving the plaintiffs fifty-one per cent controlling interest of the business operation. These statements were false in that David Thow, although wrongfully prevented by the defendant from managing the pasta business at 259 County Road, still owned a substantial, if not controlling, share of that business.
Given the context in which these statements were made, this Court finds the statements to be false and misleading statements of a material fact thus satisfying the first element of a fraud cause of action. The statements involved the specifics of the status of the business and what the plaintiffs would receive in exchange for their financial investment. Both issues, taken in the context of business negotiations, are material to the negotiations. Furthermore, both plaintiffs testified that if these statements and assurances had not been made by the defendant, they would not have invested their money in the defendant's business.
Furthermore, this Court finds that these statements, including the defendant's promise to sign an operating agreement at a later date giving the plaintiffs fifty-one per cent control of the business, were known by the defendant to be false when made and that they were indeed made with the intent to deceive the plaintiffs, thus satisfying the second element of fraud. Rhode Island courts have long held that false promises of future action can be actionable under a theory of false representation.Grassi v. Gomberg, 81 R.I. 302, 102 A.2d 523 (1954).
The defendant testified that all she wanted from the plaintiffs was "their money" and that during the time frame in which the plaintiffs had invested their money, the defendant was not operating the pasta business at 259 County Road as Thow Pasta. It was apparently not until after the defendant had locked-out the plaintiffs that the defendant resumed operating the business under the Thow name. The plaintiffs testified that the defendant had assured them that she alone owned the pasta business and that she would give them fifty-one percent controlling interest of the business to be incorporated into an operating agreement which would be signed at a later date. The defendant's attorney at the time, Bruce Cox, also testified that the defendant had agreed to provide the plaintiffs with fifty-one percent controlling interest of Pasta.
Given this testimony and the totality of the circumstances in which the false statements were made, the Court finds that the defendant's statements made to the plaintiffs regarding ownership and control of Pasta were known by the defendant to be false and were specifically made in an effort to deceive the plaintiffs, and thus the third element of common law fraud has been satisfied. It is clear that these statements were made by the defendant during negotiations with the plaintiffs in an effort to infuse investment dollars in the defendant's failing business.
The last element of common law fraud is detrimental reliance. The substantial investments made by the plaintiffs were to their detriment given the fact that they no longer have control or use of the funds expended, while at the same time they do not have the statutory rights they purchased with their investment and status as members of a limited liability company without an operating agreement. In the present case, the plaintiffs were not only investors; they were members of a limited liability company (Pasta). Limited liability companies are relatively new business vehicles in Rhode Island and in many ways resemble a hybrid business arrangement comprising features of both a company and a corporation. R.I.G.L. 1956 § 7-16-1 et. seq. These rights, which the defendant has wrongfully denied the plaintiffs, include the right to management of the company (§§ 7-16-14, 19), the right to information (§ 7-16-22), the right to vote on and control both the short-term and long-term direction of the business including but not limited to, the sale or mortgage of assets, the dissolution of the business, and the winding up of the businesses' affairs (§ 7-16-21). By wrongfully divesting the plaintiffs of these rights, the defendant has diminished the plaintiffs' ability to protect their substantial investment in Pasta. The plaintiffs have produced ample evidence of detrimental reliance on the defendants' representations. Accordingly, all four elements of common law fraud have been proven.
Remedies
The Court must next determine what remedies to afford the plaintiffs in order to redress the damages which the defendant's actions have caused them. While the plaintiffs request this Court to bar the defendant from operating Pasta and to order that they be allowed to continue the business, such a remedy is inappropriate in the instant case and would be in violation of Rhode Island law, for Pasta as a business entity ceased to exist for any purpose other than winding-up as of October 10, 1995.
The Rhode Island Limited Liability Company Act is clear and unambiguous. Section 7-16-39 states that "[a] limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: * * * (d) [t]he death, resignation, expulsion * * * of a member, or the occurrence of any event that terminates the continued membership of a member in the limited liability company, unless otherwise provided in the articles of organization or a written operating agreement." It is not disputed that in this instance no written operating agreement exists, for it was the failure of the defendant to sign said agreement that has among other things brought about this suit. Thus, without evidence of a provision to the contrary in the articles of organization, it is hereby found that Pasta was dissolved due to the wrongful expulsion of the plaintiffs by the defendant, when the defendant locked the plaintiffs out of the shop's premises on October 10, 1995. Therefore, no court ordered continuation of the business is proper. Rather this court is inclined to grant the plaintiffs an equitable lien on the defendant's assets if upon the winding up and liquidation of Pasta the plaintiffs do not recover the amount of their investment in Pasta. Such a lien on a member's share of a limited liability company is legally valid, and was contemplated by the drafters of the Rhode Island Limited Liability Company Act. See R.I.G.L. 1956 § 7-16 et seq.
These findings, however, do not end the Court's current inquiry because after the dissolution date of October 10, 1995, the defendant took certain actions that, at a minimum, she was not entitled to take. Specifically, in January 1996, the defendant allowed Donahue to pay-off a debt of Thow which encumbered assets which Pasta possessed. Then in April 1996, Donahue joined with the defendant in the creation of Amore, which took over Pasta's business location at 259 County Road. Donahue and the defendant then proceeded to transfer all of Pasta's assets into Amore, without the plaintiffs' approval, in exchange for equal shares of stock in the newly formed Amore. It is the conclusion of this Court that this transfer of assets was fraudulent under Rhode Island's Uniform Fraudulent Transfer Act and therefore was null and void ab initio. R.I.G.L. § 6-16-4;see also Landmark Medical Center v. Claire M. Gauthier,635 A.2d 1145 (R.I. 1994) Accordingly, all "transferred" assets shall revert and remain as assets of Pasta. Section 6-16-4 states that
 (a) A transfer made * * * is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made * * *, if the debtor made the transfer * * *:
 (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
 (2) Without receiving a reasonably equivalent value in exchange for the transfer * * *, and the debtor:
 (A) Was engaged * * * in a business * * * for which the remaining assets of the debtor were unreasonably small in relation to the business * * *;
 * * *
 (b) In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:
 (1) The transfer of obligation was to an insider,
 (2) The debtor retained possession or control of the property transferred after the transfer;
 (3) The transfer or obligation was disclosed or concealed;
 (4) Before the transfer was made * * *, the debtor had been sued or threatened with suit;
 (5) The transfer was of substantially all the debtor's assets;
 * * *
 (7) The debtor removed or concealed assets;
 (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred * * *."
 * * *.
Thus, if the plaintiffs were creditors of the defendant and Pasta at the time the defendant transferred the assets of Pasta to Amore, this statutory provision for voiding transfers is applicable.
Under the Rhode Island Limited Liability Company Act the plaintiffs became creditors of Pasta on October 10, 1995. See
§§ 7-16-29; 7-16-46. Section 7-16-33 states that "at the time a member becomes entitled to receive a distribution, the member has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution." In the instant matter, the plaintiffs were entitled to a distribution as of October 10, 1995 because §7-16-29 provides that "a withdrawing member is entitled to receive any distribution" equaling "the fair value of the member's interest in the limited liability company as of the date of withdrawal based upon the member's right to share, as of such date, in distributions from the limited liability company." Id.
Alternatively, § 7-16-46 provides that upon the winding up of a limited liability company, assets shall be distributed to the extent available "to members and former members first to return their capital values and second in proportions in which the members share in distributions." Thus, as of October 10, 1995, the date on which the defendant locked the plaintiffs out of the premises, the plaintiffs were entitled to "the status of and * * * all remedies available to, a creditor of the limited liability company * * *." See § 7-16-33.
Likewise, when the defendant transferred Pasta's assets to Amore, the defendant had already admitted to the plaintiffs in a telephone conversation that she owed them money. The Court finds that the plaintiffs were creditors of both Pasta and the defendant personally at the time the defendant transferred the assets to Amore. If the transfer is fraudulent under Rhode Island's Uniform Fraudulent Transfer Act, then it is also voidable. Section 6-16-4.
Under either the actual intent or reasonable exchange provisions of section 6-16-4, the transfer in question was fraudulent. If this Court applies the actual-intent-to-defraud standard, it is apparent that the transfer was made with such an intent, because it occurred only several days after the defendant admitted to the plaintiffs that she did indeed owe them money that she formed Amore and transferred all of Pasta's assets into this new corporation without notifying the plaintiffs. These same assets would have been used to pay the plaintiffs' claims, and the plaintiffs clearly had a right to such information and certainly had the right to vote for or against such a transfer of assets. § 7-16-21. The plaintiffs, possessing more than a majority, could have prevented this transfer of assets. §7-16-21(a). Similarly, after the defendant "transferred" the property she, as an officer of Amore, maintained possession and control over the assets and in substance the property was transferred to an insider, because the assets were transferred by the defendant to herself through the newly created corporate entity, Amore. Durapin, Inc. v. American Products, Inc.,559 A.2d 1051 (R.I. 1989). Finally, the assets transferred represented substantially all of Pasta's assets. In exchange for substantially all of its assets, Pasta received a mere share in the newly formed corporation.
Additionally, under § 6-16-4 of the Uniform Fraudulent Transfer Act, the transfer of these assets is voidable because the transfer was made without the plaintiffs' or Pasta's receiving a reasonably equivalent value in exchange for the transfer; and, after said transfer, Pasta was then engaged in a business for which the remaining assets of Pasta were unreasonably small. Thus the assets of Pasta, which are hereby ordered to be disposed of after the winding-up of the business, include all assets conveyed by the defendant from Pasta to Amore.
The Court further finds that the lock-out actions taken by the defendant are such that they resulted in the defendant's wrongfully dissolving Pasta, and, therefore, under 7-16-45(a) of the Limited Liability Company Act, the defendant is not legally entitled to participate in the winding-up of the company's business affairs. Thus, this Court appoints Arnold Blasbalg, Esq. of Providence, to wind-up the business of Pasta in compliance with state law, and to distribute the monies garnered in accordance with this decision. Attorney Blasbalg's fees are to be paid by the defendant, for it was the defendant's actions that wrongfully dissolved Pasta and led to the irremediable breakdown of the parties' business relationship to the point where they themselves have been unable in any meaningful manner to wind-up their own business affairs.
Counsel shall prepare and submit an appropriate order.